In the United States District Court
for the District of Minnesota



RECEIVED
BY MAIL
JUN 2 4 2020

CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

Michael Hari, Plaintiff *pro se*

vs.

No. 20-cv-1455 SRN/KMM

Joel Smith,   &
James Stuart,  Sheriff of Anoka County &
Ryan Westby, &
LT. Sheila Larson, Deputy Sheriff of Anoka County,
& Jesse Rasmussen, Anoka County Deputy
Sheriff, &  Barbara Robbins, & Officer Visel,  &
Scott Hull, & SA Brenda Kane,  & Carroll Nikki, &
 SSA Nathaniel D. Gena,  & SA Katherine Arden, &
SSA Matthew Aken,  SSA Thomas Huse,
and other unknown FBI agents
and United States Marshals,  unknown county
corrections officials, and Sheriff Joel Brott, Sheriff
of Sherburne County, & Sherburne County Jail
employees Zach Beaumaster, & Rachel Clem,
& Officer Thiel,
and Michael Sieg.

                    Defendants.

Civil
Rights Complaint

Issuance of Summons Requested

Jury Request

Civil Rights Complaint

1. Based upon the facts presented in the following complaint, the Plaintif Michael Hari, *pro se,* brings this complaint for compensatory and punitive damages and injunctive relief under Title 42, Section 1983 of the United States Code against Defendants James Stuart, DD



SCANNED
JUN 25 2020
U.S. DISTRICT COURT MPLS

Rasmussen, Lt. Sheila Larson, Officer Barbara Robbins, and Officer Visel, & Sheriff Joel Brott, and Sherburne County Jail employees Zach Beaumaster, & Officer Clem, and Michael Sieg; and Henneipin County, Minnesota employee Ryan Westby for violation of his 6th Amendment, 4th Amendment, and 1st Amendment rights under the United States Constitution for interfering with his attorney and other privileged official communication. Plaintiff Hari brings a claim under the *Bivens* doctrine (*Warren Bivens vs. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 29 LED 2D 619, (1971)) against Scott Hull, Carroll Nikki, Special Agent Brenda Kane, an unknown FBI SSA supervisor, Special Agent Katherine Arden, Special Agent Joel Smith, SSA Aken, SSA Thomas Huse, SSA Nathaniel D. Gena, and SSA Matthew Aken, and other unknown FBI agents and United States Marshals for violation of his 6th Amendment, 4th Amendment and 1st Amendment rights under the United States Constitution for interfering with his attorney communication. Plaintiff Hari brings suit under subsection 5 of 18 USCS § 2511, the *Federal Wiretap Act,* and Minn. Stat. § 626A,02, subd. 5, *the Minnesota Wiretap Act,* against against Officer Barbara Robbins, Officer Visel, Carroll Nikki, Special Agent Brenda Kane, an unknown FBI SSA supervisor, Special Agent Katherine Arden, Special Agent Joel Smith, SSA Aken, SSA Thomas Huse, SSA Nathaniel D. Gena, and SSA Matthew Aken, and other unknown FBI agents for violation of 18 USCS § 2511 subsection 1 and Minn. Stat. § 626A,02 for intentionally intercepting, disclosing, and using wire or electronic communication without the permission of either party or a valid law enforcement purpose.

Jurisdiction and Venue

2. The Court has jurisdiction under Title 42, Section 1983 of the United States Code because the Defendants James Stuart, DD Rasmussen, Lt. Sheila Larson, Zach Beaumaster, Joel Brott, Officer Clem,  Officer Thiel, Michael Sieg, unknown corrections officials, Barbara Robbins, and Officer Visel are state and local officials acting under the color of state law.  This Court has original jurisdiction of any civil action commenced by any person to redress the deprivation, under color of any State law, statute, or ordinance, regulation, custom, or usage, of any right or immunity secured by the Constitution of the United States under Title 28 Section 1343 of the United States Code.  The court has jurisdiction of the remainder of the claims under the *Bivens* doctrine and the Wiretap Acts.  This is the proper venue to hear this complaint because the events described in this complaint occurred in the District of Minnesota; or, in the case of some interception of attorney-client communication by FBI agents and their confederates, were part of a series of inextricably interlinked events that occurred at least partially in the District of Minnesota and involved agents of the federal government acting in concert with one another and with members of at least 4 separate legal entities both in the District of Minnesota and other locations including but not limited to the State of Illinois to achieve the same unlawful ends, viz. the interception, collection, and dissemination of privileged attorney-client, court, and public official communication, and this is the most convenient forum for the adjudication of these questions.   Actors who acted outside the State of Minnesota did so with a purposeful connection to Minnesota, which was the violation of 6th and 1st Amendment rights in order to effect the transmission of privileged material to Minnesota, and significant contacts in Minnesota which included co-conspirators

in Minnesota.  *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.* 51 F.3d 1383 (8th Cir. 1995).

## Immunity

3.  The acts committed by the Defendants giving rise to this complaint were the result of willful and wanton misconduct by the Defendants.   The violations in this complaint were intentionally committed against statutory and constitutional rights rights clearly established at the time of the violation.    No proper defense of qualified immunity can be raised as a result.   *Pearson v Callahan* 556 U.S 223, 231 (2009).    The Defendants are not entitled to indemnity.

## Civil Conspiracy

4.  Many violations of the Plaintiff's attorney-client communication were carried out in furtherance of the corrupt purposes of a single civil conspiracy that involved the deprivation of the Plaintiff's constitutional rights by agreement between corrections officials and law enforcement officials that crossed department lines and involved county corrections officials, federal agents, and state law enforcement officials from at least four separate legal entities. The purpose of this conspiracy was the collection of privileged communications from the Plaintiff in violation of his 1st and 6th Amendment and 4th Amendment  rights and creates the basis for a claim under 42 US 1983 for state and local conspirators and a claim under the Bivens doctrine for federal conspirators.  The overt acts of this conspiracy included the collection, reading, copying, recording, screening, dissemination, and use of this privileged information to the injury of the Plaintiff.     There is no legitimate purpose for county corrections, local law enforcement, federal law enforcement, or state law enforcement to

read, record, scan, copy, or listen to privileged communications.  All the participants willfully agreed to participate in these acts with at least some of the participants for a corrupt purpose.  All county and local conspirators were linked in a single conspiracy by their agreement to provide such information to a law enforcement central hub that connected all participants in a single conspiracy. *Burton v St. Louis Bd. Of Police Comm'rs.* 731 F. 3d 784 (8th Cir. 2013). *White v. McKinley*, 519 F 3d. 806 (8th Cir. 2008).    The conspiracy began not later than May 27, 2018 when Robbins and Visel agreed to summarize and collect attorney client phone call recordings and provide them to federal authorities with the assistance of county corrections officials, and continued at least through January of 2020 when county corrections officials at Sherburne County were intercepting privileged communications and providing that information to Brenda Kane (Plaintiff's Exhibit #16, #17, incorporated into this complaint by reference).  The existence of a meeting of the minds in agreement by the conspirators is demonstrated by the fact that conspirators participated in collecting, providing, accepting, scanning, copying, analyzing, transmitting, and disseminating such information in a cooperative manner over a period of many months duration. The existence of this conspiracy helps to establish the purpose and motive of the acts described in this complaint, however the individual acts of each Defendant in this complaint constitute violations of the constitutional rights of the Plaintiff and create a basis for claims without any necessity for reference to any conspiracy.   Prior to the discovery of this conspiracy and its extent, claims were made for similar violations of the Plaintiff's rights against members of this conspiracy who are not parties to this action in 19 cv 2547.  Members of the conspiracy (including both parties to this cause, non-parties, and parties to 19 CV 2547) include Carroll

Nikki, Special Agent Brenda Kane, her unknown FBI SSA supervisor, Special Agent Katherine Arden, Special Agent Joel Smith, SSA Akens, FBI employee Scott Hull, SSA Huse, and SSA Nathaniel D. Gena, and other unknown FBI agents and United States Marshals,  DD Evans, DD Larson, Sheriff Stuart, Ryan Westby, Tessa Villergas, Zach Beaumaster, Joel Brott, Officer Clem, Officer Theil, Michael Sieg, unknown county corrections officials, Barbara Robbins, and Officer Visel.  The roles of each member of this conspiracy were as follows.  DD Evans, DD Larson, Tessa Villergas, Zach Beaumaster, Joel Brott, James Stuart, unknown US Marshals, unknown corrections officials, Barbara Robbins, Officer Visel. Officer Clem, Officer Theil, Ryan Westby and Michael Sieg agreed to read, review, scan, collect, record or transmit privileged legal or court communications including telephone calls and letters, or personally gave specific supervisory approval for those acts or for the policies that lead directly to the commission of these acts.  Some of this privileged information was then provided to members of the conspiracy who were part of a federal law enforcement hub with its primary location n Brooklyn Center, Minnesota.  The members of the conspiracy who agreed to receive, collect, summarize, transmit, analyze, or decode privileged legal communications or who personally gave supervisory approval for those acts as part of the law enforcement hub were the following:    Carroll Nikki, Special Agent Brenda Kane, her unknown FBI SSA supervisor, Special Agent Katherine Arden, Special Agent Joel Smith, SSA Akens, FBI employee Scott Hull, SSA Huse, and SSA  Nathaniel D. Gena, and other unknown FBI agents. The members of this conspiracy recorded repeated batches of Hari's phone calls with his attorneys from inmate phone systems at Kankakee County Illinois and  Livingston County Illinois, summarized the calls in writing, approved official reports of the capture, recording

and analysis of the calls, and transmitted them to Minnesota and other places.   The conspiracy members also seized letters from Hari to his attorneys at the Urbana Court house, Anoka County Jail (on at least three different occasions), transmitted the letters to conspiracy members in Minnesota and other places, and gave them to an FBI cryptographer for analysis.   The members of the conspiracy interfered with Hari's correspondence to the courts and elected officials.

Parties

5.   Plaintiff Michael Hari was an inmate at Livingston County Jail, Kankakee County Jail, Anoka County Jail, and Sherburne County Jail when the events described in this event occurred.

6.   All of the Defendants were corrections officials who had custody of the Plaintiff, or law enforcement officials who participated in the unlawful collection and dissemination of privileged attorney client, court, or elected official communications while the Plaintiff was housed at Kankakee County Jail, Anoka County Jail, Livingston County Jail, or Sherburne County Jail.

7.     Defendant James Stuart, was Anoka County Sheriff when the events described in this complaint occurred, and is sued both personally and in his official capacity for claims under Title 42 Section 1983.   The Plaintiff brings suit against Stuart in his official capacity for injunctive relief, and also for punitive and compensatory damages on the grounds that official policies, practices, and customs of the Anoka County Jail, administered by Sheriff

7/25

Stuart, caused some of the violations and injuries to the Plaintiff. *Monell v New York City Dept of Social Serv. et al.* 436 US 658 (1978). The Sheriff is personally liable for the acts of his employees under Minnesota law. (Minn Stat 387.14). Except as provided in this paragraph and the following paragraph, suit is brought for punitive and compensatory damages against the Defendants in their personal capacity, and for injunctive relief only against the Defendants in their official capacity.

8.   Defendant Joel Brott, was Sherburne County Sheriff when the events described in this complaint occurred, and is sued both personally and in his official capacity for claims under Title 42 Section 1983. The Plaintiff brings suit against Brott in his official capacity for injunctive relief, and also for punitive and compensatory damages on the grounds that official policies, practices, and customs of the Sherburne County Jail, administered by Sheriff Brott, caused some of the violations and injuries to the Plaintiff. *Monell v New York City Dept of Social Serv. et al.* 436 US 658 (1978). The Sheriff is personally liable for the acts of his employees under Minnesota law. (Minn Stat 387.14). Except as provided in this paragraph and the paragraph above, suit is brought for punitive and compensatory damages against the Defendants in their personal capacity, and for injunctive relief only against the Defendants in their official capacity. From 2/13/20 through 4/25/20, and from 8/21/20 through 3/10/20 Plaintiff Hari was housed in the Sherburne County Jail, and was refused a private telephone to speak with his attorneys outside the hearing of other inmates or staff. (Plaintiff's Exhibit 15, incorporated into this complaint by reference) Privacy of inmate phone calls from other inmates and staff has been required by precedent in the 8th Circuit since the 1970s. The

attorneys representing Hari in the Central District of Illinois were located more than 500 miles from Hari, and were not able to confer with Hari during this entire period. Visiting with Hari in person was impossible due to the distance. There were no other provisions made at all for attorney-client communication other than mail during this entire period. This was according to the official policy of Sherburne County Jail, administered by Sheriff Brott.

9. Defendants Sheila Larson & Jesse Rasmussen were Anoka County Deputy Sheriffs when the events described in this complaint occurred, and are sued both personally and in an official capacity for claims under Title 42 Section 1983.

10. Defendants Barbara Robbins and Officer Visel were both members of the University of Illinois Police Department acting under the direction of and in collaboration with FBI agents to unlawfully violate the sanctity of the attorney client communications of Plaintiff Michael Hari when the events described in this complaint occurred, and are sued both personally and in their official capacities for claims under Title 42 Section 1983. Plaintiff Hari brings suit against Robbins and Officer Visel in their official capacity for injunctive relief.

11. Defendants Carroll Nikki, Special Agent Brenda Kane, her unknown FBI SSA supervisor, Special Agent Katherine Arden, Special Agent Joel Smith, SSA Matthew Akens, FBI employee Scott Hull, SSA Thomas Huse, and SSA  Nathaniel D. Gena, and other unknown FBI agents and United States Marshals were United States federal law enforcement officials when the events described in this complaint occurred and are sued under the Bivens doctrine for

violation of Plaintiff Hari's 6th Amendment, 4th, and 1st Amendment rights under the United States Constitution. The Bivens claim is made against these defendants in their personal capacity only. (*Warren Bivens vs. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 29 LED 2D 619, (1971))

## Legal Communications with Attorneys

12.   From 2/13/20 through 4/25/20, and from 8/21/20 through 3/10/20 Plaintiff Hari was housed in the Sherburne County Jail, and was refused a private telephone to speak with his attorneys. The attorneys representing Plaintiff Hari in the Central District of Illinois were located more than 500 miles from Hari, and were not able to confer with Hari during this entire period. Visiting with Hari in person was impossible due to the distance. There were no other provisions made at all for attorney-client communication other than mail during this entire period. This was according to the official policy of Sherburne County Jail, administered by Sheriff Brott despite repeated requests, grievances, appeals, and the requests of his attorney. (Plaintiff's Exhibit 15, incorporated into this complaint by reference)

13.  On 6/15/19 Plaintiff Michael Hari attempted to send a letter to his attorney by sliding the properly marked envelope through the door to (non-party) Anoka County DD Zerwas. Zerwas attempted to carry the envelope away unsealed. When Hari objected, Zerwas insisted that the letter had to be scanned. Hari was able to persuade Zerwas to come back and to return the letter to him. Zerwas logged the incident on 6/15/19.     Zerwas log entry

demonstrates that she believed that the appropriate course of action was to scan legal mail, and she commented on Hari's insistence on sealing it in front of him.  Zerwas also logged conversation with SGT Crego about it, who stated he would look at the letter. Plaintiff Hari recorded the incident in a post-script to his letter to Attorney Aligada, which is consistent with Zerwas log entry.  A copy of the properly marked envelope has also been retained. Although on this particular occasion Hari was able to regain control of the legal mail, the Zerwas incident further documents the Anoka County Jail Defendants' practice of refusing to seal legal mail and scanning legal mail consistent with the goals of the conspiracy, and her attempt to scan the document is an overt act in furtherance of the conspiracy.  On several occasions, Anoka County deputies were awkwardly reluctant to seal legal mail to attorneys, officers of the court, and legal aid organizations in front of Plaintiff Michael Hari, and several times, including when the Plaintiff Michael Hari sent off his complaint in 19cv1330 ECT/TNL, have refused to seal the mail, carrying it away open.  On 7/20/19, 8/1/19. and 8/20/19 staff were instructed on their daily briefing agenda to "scan legal mail envelopes [of Plaintiff Hari] and forward to duty sgt."   These facts, along with others, demonstrate the policy or practice regarding inmate legal mail at Anoka County Jail.  On at least two other occasions in the same 50 day period Anoka County Jail provided the Plaintiff's attorney-client mail to federal authorities, resulting in claims in 19 cv 2547 (District of Minnesota).


14. In spite of the fact that written notices at Livingston County and Kankakee County jails, recorded notices on phone lines, and written policies at both institutions made it clear that attorney phone calls were not supposed to be recorded, on September 9, 2019 Plaintiff Hari

found summaries of telephone calls he made to attorneys Tom Patton and Elisabeth Pollack in discovery documents provided by the government revealing that between March 13, 2018 and as late as October of 2018, agents of the Federal Bureau of Investigation based out of Brooklyn Center, Minnesota and Central Illinois along with collaborating Task Force Officers from the University of Illinois Police, and collaborating corrections officials of the Anoka County, Sherburne County, Kankakee County (Illinois), and Livingston County Jails (Illinois) collected and reviewed recordings of inmate telephone calls.  Some of these recordings including recordings of telephone calls with Plaintiff Hari's attorneys protected by privilege. During the same period, and at other times unknown, the corrections officials named in this complaint and others agreed with law enforcement and prosecution officials to violate the Plaintiff Hari's attorney-client and other privilege in his communications.   Officers included in the telephone interception activity included SA Katherine Arden of Brooklyn Center, MN, SSA Nathaniel D. Gena, location unknown, SA Joel Smith of Illinois, TFO Visel of the University of Illinois Police, and TFO Barbara Robbins of the University of Illinois Police.  The FBI was aware that the attorney phone calls were being collected by the Kankakee County Jail telephone system no later than 5/27/18, when TFO Visel's summaries of the phone calls were provided to SSA Nathaniel D. Gena for approval by TFO Robbins along with her report. In spite of TFO Visel's summary of the calls including the fact that a privileged attorney phone call to the Federal Public Defender was recorded on 5/16/18 at 16:34:24, SSA Gena approved Robbins' report, and collection of privileged phone calls continued at least through 7/31/18. Visels subsequent reports containing summaries reporting the recording of attorney client calls were reviewed by Robbins and approved by SSA Thomas Huse and SSA Matthew

Aken.  At no time did any of the participants in this collection filter their call collection, request a change in collection from the inmate phone service, or otherwise attempt to end the collection of the attorney calls.  During those months Officer Visel recorded collection of at least eight additional calls to the Federal Public Defender's Office by Michael Hari.  SA Joel Smith reviewed the calls made during that period, and although no summaries of his were provided by prosecutors in disclosures through 2/4/20, Smith did write a report on 1/24/19 concerning the content of a call made on 3/14/18. Smith mentioned no attorney calls in his report.  SA Katherine Arden of Brooklyn Center, Minnesota reviewed and summarized calls from 9/23/18 through 10/12/18 in a report dated 1/11/18, and did not mention the collection of any lawyer calls in her summaries.  Arden also wrote summaries of calls from 10/3/18 through 11/21/18 in a report dated 1/24/19.  Only Visel reported the recorded attorney calls in these provided summaries.  Call summaries from 3/13/18 through 5/5/18 are not in the discovery, but Smith's report of 1/24/19 does indicate he was familiar with their content. The phone number recorded is the number of the Federal Defenders for the Central District of Illinois.  This would be the same number used by all Central District federal detainees represented by Federal Defenders at Urbana and housed at Kankakee County, IL, not some obscure number that wouldn't have already been entered in the jail telephone system as an attorney number.  This data was obviously reported to the prosecutors, because that is the first source the Plaintiff got it from. Rather than promptly and clearly report the violation the government buried this evidence of the violations in thousands of pages of discovery. While the summary notes were provided in discovery by the prosecutors, the recording of the attorney phone calls were not, although all of the other phone calls summarized and

recorded during those date ranges were disclosed.  This selection of only non-privileged phone call recordings for disclosure by the Defendants is self-serving, and is evidence of deception and conscious wrongdoing.  After Plaintiff Hari drafted a letter to his attorney about the violations, Prosecutor Allyn immediately called Plaintiff Hari's attorney Shannon Elkins, and  "disclosed" to her that these calls had been recorded, along with additional previously completely undisclosed calls intercepted from a second county jail phone system at Livingston County, Illinois which were summarized by  SA Katherine Arden and Carroll Nikki, both of FBI Brooklyn Center, Minnesota.  FBI Special Agent Joel Smith first obtained access to Livingston County calls in September 2018 after a telephone conversation and an email to Superintendent Inman at Livingston County Jail.  This report by Arden was approved by Arden's unidentified Supervisory Special Agent, along with the summaries of attorney-client phone calls by Caroll Nikki,.  Plaintiff Hari was made aware for the first time of these additional violations by letter on 1/14/20, by which time Hari had already filed the first set of summaries of recorded phone calls as evidence with the Minnesota District Court in 19cv2547.   In Allyn's  "disclosure" of the 14th, an email between SA Brenda Kane and Scott Hull of the FBI revealed that Kane had provided the recordings of Hari's phone calls, including recordings of attorney-client conversations to Hull with her recommendation that he listen to them and comments about the content of earlier recorded phone calls.  Hull and Kane discussed a recording of a conversation from a year before between Hari and his father about Cryptonomicon, a work of fiction that describes encryption, and Hull asked Kane for the ISBN number of a book that "Hari had."    In context, the book that Hull and Kane were discussing was not Cryptonomicon, but rather Hull and Kane were talking about other books

that Plaintiff Hari might have had in his cell at that time.  Use of an ISBN number is one technique used to obtain an identical copy of a book, and obtaining an identical copy of the book used as a one-time pad is an important step in breaking one time pad encryption. Plaintiff Hari used one-time pad encryption to communicate with his attorneys on occasion after learning about the potential compromise of his attorney mail communications.  After Anoka County seized a large volume of Hari's attorney mail and refused to return it (documented in 19 CV 2547), Hari turned to encryption for attorney communication, and after Hari turned to encryption, the response was the use of the FBI's crypto-analyst Hull.

15.  It was no coincidence that Defendant Jesse Rasmussen noticed an encrypted letter to Hari's attorney in the process of being written in code on Plaintiff Hari's desk during a cell search, and logged the fact in his official log on 6/2/19 at 15:36, and about a month later FBI SA Brenda Kane and Scott Hull were discussing encryption by email and Hull was requesting ISBN numbers of books from Plaintiff Hari's cell.  In a later disclosure from the prosecution, encrypted material that SA Brenda Kane submitted to the FBI crypto-lab on 6/11/29 was in fact an encrypted letter for the Plaintiff's attorney. Although according to the lab report the FBI lab had some difficulty breaking the subject matter portion of the encryption, it was not because they didn't try.  FBI did break at least both the simple single cipher key portion and the decoy one time pad component of the message.  Kane sent Hall the recordings of Hari's attorney phone calls to assist him in the decryption of Hari's letter to his attorney. Rasmussen sent the encrypted attorney letter to Lt. Larson, who sent it to Ryan Westby, who transmitted the letter to FBI defendants including Brenda Kane.  Apparently they were still

attempting to break the remainder of the message a month later when Kane and Hull were continuing to correspond about the message. Rasmussen attempted to conceal the seizure of the letter by not divulging it on the cell shakedown form completed that day, though he did mention it in his daily log (which is not ordinarily accessible to inmates).   Documents received from federal law enforcement show that the copies of the letter provided to the Plaintiff through criminal discovery are incomplete.   Portions of the letter demonstrating that it was attorney client mail were deleted from provided scans although they were part of the letter at the time of scanning, and the scanned document from the FBI does match the letter sent by Hari to his attorney.

16.   On 1/17/20, Plaintiff Michael Hari noticed the jail *pro se* computer in the Sherburne County Max unit where he was housed included a feature called the "Intel Management Engine." The "Intel Management Engine" permits remote access to the computer.   It also includes a security feature called the "Access Monitor."   "Access Monitor content includes description of events which may be of interest from a security and privacy perspective, such as Network Administration, Storage Administration, remote control operations, and more." (Intel IMSS User Guide, Plainitiff's Exhibit #2, incorporated into this complaint by reference) Using the Access Monitor, Plaintiff Hari printed out an a log of events (System Information report, Plainitiff's Exhibit #1) .   Perusing the log, Plaintiff Hari found that from 6/6/2018 through 2/16/19, the log only recorded 7 admin access events with intervals weeks in length in between.   On 3/13/19, Plaintiff Hari arrived at Sherburne County Jail, and shortly afterward began using the computer to view discovery and to write correspondence and

privileged legal notes to his defense attorneys. During the period 2/16/19-3/9/19, Admin logins increased dramatically in frequency. There are 19 admin logins in the period 2/16/19 through 3/9/19, sometimes multiple times in a single day. In April, Plaintiff Hari was transferred to Anoka County Jail where he remained until August 21, when he returned to Sherburne County Jail. During the period Hari was absent from Sherburne County Jail there was not a single Admin login event on the Access Monitor. In September 2019, Plaintiff Hari resumed using the jail *pro se*/discovery computer in Max. On 10/15/19 Admin logins resumed, with 112 Admin events logged through 1/13/20, often daily or multiple times a day. On January 2, 2020, Plaintiff Hari completed a first rough draft of a letter to defense attorney Shannon Elkins and printed it out, as described in the paragraph above (a very brief note of the recorded phone call activity had been printed on September 9, 2019) and discussing defense strategy concerning the interception of the calls. On January 6, 2020 AUSA Julie Allyn called Elkins to "disclose" that "inadvertent" recording of Plaintiff Hari's phone calls had taken place, and on January 9, Allyn hand delivered a letter to Elkins about the recordings. Elkins first informed Plaintiff Hari on January 14 th by letter of Allyn's "disclosure." On January 7th, Hari had already mailed evidence of the recordings to the District Court as evidence in 19 cv 2547, and on January 8th Hari had hand delivered to defense Investigator Spahn a copy of his letter to Elkins. Allyn's panicked telephone disclosure and hand delivered letter are too close in time to Hari's letter to Elkins to be easily accepted as coincidental, especially considering the high volume of logged Admin events during that period. (The computer date and time are actually wrong, see screenshot of time/ date). Sherburne County Jail rules do not permit access to inmate files outside the presence

of the inmate. (see Flash Drive Privacy Statement). (HP DeskJet Permissions).   On February 3-February 4, highly sensitive attorney client communication was tampered with on Plaintiff Hari's flash drives at Sherburne County Jail.  On both those dates, files disappeared from one flash drive, and a notification from the software indicated that a user other than the Plaintiff had altered files since he last accessed them.   On two occasions, the Plaintiff's flash drive was found plugged into the Max computer by another inmate with the Bitlocker password entered, permitting access by inmates or staff to a large quantity of lawyer-client communication, in spite of the fact that jail staff had already removed the drive from the computer in front of the Plaintiff prior to the other inmate accessing the computer in another nearby unit.  In spring of 2020, the Max unit computer auto-saved the Plaintiff's files consisting of privileged attorney client correspondence to another inmates' flash drive on three occasions, demonstrating that the computer was retaining copies of saved files after the Plaintiffs' use of the computer and removal of the flash drive.   Officer Christiaansen observed the auto-saved files on the other inmates flash drive and alerted his sergeant by email.  Software installed on the computer includes both software capable of remote access to the computer and of autosaving of files.   (Intel Rapid Store, File Vault, and Intel Management Engine).  (Plaintiff's Exhibits 25, 23, 21, 24).

17.  On or about July 27, 2018 two unknown U.S. Marshals at Urbana, IL seized a letter, properly marked as legal mail, from Plaintiff Hari's person addressed to his attorney Elisabeth Pollack, and read the letter, copied it, and distributed the legal correspondence to the Federal Bureau of  Investigation.  FBI officials then transmitted copies of this mail to

Brooklyn Center, Minnesota.  USMS employees also disseminated privileged information derived from that letter to the Sherburne County Jail and Anoka County Jail in Minnesota and Kankakee County Jail in Illinois on USMS Form 129's and otherwise.  The letter was a total of 13 pages in length.  Eleven pages of the letter concerned highly sensitive lawyer-client information that Plaintiff Hari wanted Lawyer Pollack to refrain from reading until he gave permission for her to do so but which he wished to communicate to her at that time in order to create a record, unless for some reason he should unexpectedly die, in which case he wanted the information read immediately.  The other portion of the letter contained information about Plaintiff Hari's untreated agonizing pain he was suffering due to gall stones and his lack of appropriate treatment for his angioedema (a life threatening health condition) including a recent incident when Kankakee County corrections deputies treated a severe allergic reaction by giving Hari an Epi-pen, watching him use it, and then turning off the lights and leaving him unattended in his cell the rest of the night in respiratory distress, and contained suggestions he wished to relay to his attorney for her input concerning methods of obtaining treatment in such an emergency.  Marshals seized upon the marking on some pages reading "to be read in the event of my death," along with the discussion of other methods of attempting to obtain treatment as suggesting that the letter was a suicide note.   This marking and content was not visible without removing the letter from the properly marked and addressed privileged envelope.

18   Beginning in October, 2019, Plaintiff Hari noticed that privileged mail sent from the Sherburne County Jail to the United States District Court for the District of Minnesota was

being postmarked long after he placed it in the Sherburne County Jail mail, was postmarked with Minneapolis postmarks instead of Elk River postmarks, and had sometimes arrived at the clerk's office with missing pages or with pages mixed from different envelopes in spite of the fact that the envelopes were all sealed in front of Plaintiff Hari by corrections officers. Some of the mail was delayed by weeks from the date it was placed in the hands of corrections officers until the day it was mailed. (see records of the clerk, , Letter to Clerk October 18, 2019; Interference with Court Communications I; Interference with Court Communications II;  Clerk Letter of October 26, 2019, Letter to Postmaster ).  Other mail arrived with glued or taped flaps, though inmates are not provided with either tape or glue. The Plaintiff later discovered Michael Sieg had provided privileged documents to Brenda Kane. (Sherburne County Request Form ).


19. On December 6, 2019 Plaintiff Hari attempted to send a properly marked privileged letter to a civil attorney by passing it through the door to Sherburne County Officer Zach Beaumaster.   Instead of removing the letter, shaking it for contraband, and inspecting the envelope, Beaumaster slowly and deliberately read the letter in front of Plaintiff Hari in the hallway in front of the door to Block 10.  Hari admonished Beaumaster repeatedly, informing him that the letter was legal mail.  In spite of Hari's remonstrance, Beaumaster continued to read the letter all the way through before returning it to Hari for sealing.  Hari filed a grievance with Officer Neuberger within the hour, (Beaumaster grievance) and requested the preservation of the video of Beaumaster reading the letter.  Plaintiff Hari also gave the carbon copy of the grievance to James Becker, his attorney.  On January 6, (30 days after

filing) Plaintiff Hari had still not received a reply, and filed an appeal of the grievance. The reply, by SGT Hoppe, informed Hari no such grievance could be found and requested the carbon copy.   (Hoppe reply to appeal).   Plaintiff Hari had attorney Becker send a copy to SGT Hoppe, which was then entered in the system.   The reply to the grievance did not respond to the request for video preservation, and was also not responsive to the issues raised in the grievance.   A second appeal was filed requesting an answer about the preservation of video and the results of any review of video.

20.   On 12/17/19 Officers Clem, Thiel, and Wetterhahn entered Plaintiff Hari's cell and conducted a search nearly an hour in length focused on reading legal materials, primarily correspondence between Hari and his attorneys and notes prepared for his attorneys, as well as flipping through discovery materials. When Hari complained, Thiel told Clem not to be intimidated by Hari's complaint of reading legal material, encouraging her to search all the more diligently since Hari seemed to be sensitive about his legal material and was likely to be hiding something in it.  Thiel also stated that Hari could not prevent them from reading his stuff just by marking it legal.  Wetterhahn's involvement was limited to watching.  Hari filed a grievance immediately, and requested preservation of video for use in court. (Clem Thiel Grievance Forms/Appeals)

21,   On March 16, 2020 an open envelope was delivered to the Plaintiff with privileged communication from the U.S. Court for the Central District of Illinois torn open, with a post-it note stuck on it explaining it had been opened prior to delivery. (Plaintiff's Exhibit 27)

Prayer for Relief

Wherefore, the Plaintiff request the following relief:

1. Order the Defendants to pay compensatory and punitive damages to Plaintiff.

2. Order the Defendants to turn over all copies of each Plaintiff's own intercepted attorney client privileged material in all forms to each of the Plaintiff.

3. Order Defendants to turn over all copies of all records or documents in any form containing or making use of information from any intercepted attorney-client communication, and to destroy or erase all additional copies of records or documents retaining none in the Defendants possession.

4. Order the Defendants to attempt to collect all disseminated documents containing any information derived form any intercepted attorney-client communication or privileged material in any form, and to provide the Plaintiff with a list of all places or persons to whom such material was disseminated.

5. Order the Defendants to permit a reputable third party to audit their compliance with this order at the Defendants own expense and provide the Plaintiff with an audit report.

7. Grant injunctive relief forbidding all Defendants from censorship or interference and monitoring of lawyer/client communication of Plaintiff.

8. Grant injunctive relief permanently forbidding all Defendants from interfering with lawyer client phone call privilege and telephone privacy for Plaintiff.

10. Grant injunctive relief under the Federal Wiretap Act, subsection 5 of 18 USCS § 2511, and a $500 civil penalty for each intercepted call collected, analyzed,

disseminated, disclosed or otherwise used for each defendant who may have previously been found liable under the FWA.

11.  Grant injunctive relief, compensatory damages, punitive damages, and such other penalties or relief as may be available under Minn. Stat. § 626A,02, subd. 5, the *Minnesota Wiretap Act,* for intentionally intercepting, disclosing, and using wire or electronic communication without the consent of either recorded party, and outside of the exercise of the legitimate duties of a law enforcement officer.

Plaintiff's signature _____

Plaintiff, pro se

Plaintiff's Printed Name _Michael Hari_ Date _6, 19, 20_

Plaintiff's address:

_Michael Hari_
_Sherburne Co Jail_
_13880 Business Center Drice N.W._
_Elk River MN 55 330_