**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Emily Claire Hari, f/k/a Michael Hari,          Case No. 20-cv-1455 (ECT/TNL)

                Plaintiff,

v.                                              **REPORT & RECOMMENDATION**

Joel Smith, et al.,

                Defendants.

---

Emily Claire Hari, f/k/a Michael Hari, Livingston County Jail, 844 West Lincoln, Pontiac, IL 61764 (pro se Plaintiff);

Liles Harvey Repp, Assistant United States Attorney, United States Attorney's Office for the District of Minnesota, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Defendants Joel Smith, Ryan Westby, Barbara Robbins, Scott Hull, Brenda Kane, Nikki Carroll,[1] Nathaniel D. Gena, Katherine Arden, Matthew Aken, and Thomas Huse);

Robert I. Yount, Anoka County Attorney's Office, 2100 Third Avenue, Suite 720, Anoka, MN 55303 (for Defendants James Stuart, Sheila Larson, and Jesse Rasmussen);

Lindsey Schmidt and Michael M. Krauss, Greenberg Traurig, LLP, 90 South Seventh Street, Suite 3500, Minneapolis, MN 55402 (for Defendant Officer Visel); and

Aaron Mark Bostrom, Jason M. Hiveley, and Stephanie A. Angolkar, Iverson Reuvers, 9321 Ensign Avenue South, Bloomington, MN 55438 (for Defendants Sheriff Joel Brott, Zach Beaumaster, Rachel Clem, Officer Thiel, and Michael Sieg).

---

      This matter is before the Court on Defendants Brott, Beaumaster, Clem, Thiel, and

Sieg's (hereinafter "Sherburne County Defendants") Motion to Dismiss (ECF No. 40);

---

[1] Hari refers to this Defendant as Carroll Nikki throughout her amended complaint. Federal Defendants have clarified that this Defendants' name is Nikki Carroll, not Carroll Nikki. (ECF No. 92 at 5 n.3.)

Anoka County Defendants'[2] Motion to Dismiss (ECF No. 59);  Sherburne County Defendants' Motion to Dismiss (ECF No. 65); Plaintiff's Motion to Dismiss or Otherwise Eliminate Rasmussen Claims from this Cause (ECF No. 78); Federal Defendants'[3] Motion to Dismiss (ECF No. 90); Defendant Beth Visel's Motion to Dismiss the Amended Complaint (ECF No. 99); and Plaintiff's Motion for Leave to Amend Civil Rights Complaint and Memorandum in Support (ECF No. 137).  These motions have been referred to the undersigned for a report and recommendation to the district court, the Honorable Eric C. Tostrud, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I.  BACKGROUND AND PROCEDURAL HISTORY

In March of 2018, Plaintiff, then known as Michael Hari, was arrested in the State of Illinois.  *See Hari v. Stuart*, No. 19-cv-1330 (ECT/TNL), 2020 WL 7249816, at *2 (D. Minn. Aug. 21, 2020) [hereinafter *Hari I*], *report and recommendation accepted*, 2020 WL 6391305 (D. Minn. Nov. 2, 2020).  She was indicted and later convicted in this district on several charges related to the bombing of an Islamic Center and Mosque in Bloomington, Minnesota.  (*See United States v. Hari, et al.*, 18-cr-150 (DWF/HB) (D. Minn.) [hereinafter *United States v. Hari I*], ECF No. 1.)  She also faces charges in Illinois that relate to the unlawful possession of a machinegun, attempted arson, interference with commerce by threats and violence, and unlawful possession of a firearm for her alleged involvement in the White Rabbits militia.  (*See United States v. Hari*, No. 18-cr-20014 (C.D. Ill.)

---

[2] Anoka County Defendants are Defendants Joel Smith, James Stuart, Sheila Larson, and Jesse Rasmussen.
[3] Federal Defendants are Ryan Westby, Barbara Robbins, Scott Hull, Brenda Kane, Nikki Carroll, Nathaniel D. Gena, Katherine Arden, Matthew Aken, and Thomas Huse.

[hereinafter *United States v. Hari II*], ECF Nos. 32, 39, 94.)

In February 2019, Hari attempted to escape the custody of the United States Marshals Service while she was being transported from Illinois to the Sherburne County Jail. *Hari I*, 2020 WL 7249816, at *2. Hari remained at the Sherburne County Jail until April 25, 2019, when she was transferred to the Anoka County Jail. *Id.* Hari filed her first suit against certain Anoka County officials on May 20, 2019, alleging violations of her rights under the Religious Land Use and Institutionalized Persons Act; violations of her First Amendment Rights; violations of her rights under the Due Process Clause of the Fourteenth Amendment; and violations of her rights under the Equal Protection Clause of the Fourteenth Amendment. *Id.* at *1. Defendants in that case moved for summary judgment, and summary judgment was granted on those claims following the District Court's acceptance of the undersigned's Report & Recommendation over Hari's objections. *Hari v. Stuart*, 2020 WL 6391305, at *5. On August 21, 2019, Hari was transferred back to the Sherburne County Jail to await trial on her criminal case in *United States v. Hari I*. *Hari I*, 2020 WL 7249816, at *1.

On August 22, 2019, Hari filed another suit with two other inmates alleging other constitutional violations during those inmates' overlapping time at the Anoka County Jail. *Laughlin, et al. v. Stuart, et al.*, No. 19-cv-2547 (ECT/TNL) (D. Minn.) [hereinafter *Hari II*]. Plaintiffs initially alleged that Anoka County jail employees: (1) provided inadequate dietary nutrition in violation of the Fifth and Fourteenth Amendments; (2) inhibited each Plaintiffs' ability to communicate with their attorneys and review legal materials, and that jail employees reviewed materials subject to attorney-client privilege in violation of their

Fifth, Sixth, and Fourteenth Amendment rights; (3) performed "sexually abusive patdowns" in violation of their Fifth and Eighth Amendment rights; (4) failed to provide adequate access to discovery in their criminal cases in violation of their Fifth, Sixth, and Fourteenth Amendment rights; (5) failed to provide adequate access to the jail's law library in violation of their Fifth and Fourteenth Amendment rights; and (6) violated their Fifth and Fourteenth Amendment rights through disciplinary segregation. (*Hari II*, ECF No. 1.)

Plaintiffs in *Hari II* moved to amend the complaint twice. On one of those occasions, Hari proposed adding extensive claims, specific to her. These claims related to allegations that employees of multiple law enforcement agencies and correctional facilities collected and reviewed Hari's privileged telephone calls; correctional officers at the Sherburne County Jail monitored Hari's use of a computer to view discovery and correspond with her attorneys; unidentified Marshals in Illinois seized Hari's legal mail and disclosed information in it; mail that Hari sent from the Sherburne County Jail was opened, disclosed, and, in some cases, altered and delayed in delivery; and certain correctional officers searched Hari's cell and read her legal materials. (*See Hari II*, ECF No. 81 at 4-5.)

Following the Court's denial of Hari's request to file additional claims in *Hari II*, Hari filed a new complaint in the above-captioned case detailing these allegations on June 24, 2020. (ECF No. 1.) Sherburne County Defendants moved to dismiss the complaint on March 5, 2021. (ECF No. 40.)

Defendant then amended her complaint on March 16, 2021. (ECF No. 47.) Anoka County Defendants filed a motion to dismiss on March 29, 2021. (ECF No. 59.) Sherburne

County Defendants filed a motion to dismiss the amended complaint on March 30, 2021. (ECF No. 65.)  Hari filed a "motion" to dismiss the Anoka County Defendants on April 8, 2021.  (ECF No. 78.)  The Federal Defendants filed a motion to dismiss on April 16, 2021. (ECF No. 90.)  Visel filed her motion to dismiss on the same day.  (ECF No. 99.)  In addition to filing memoranda in opposition to Defendants' motions to dismiss, Hari filed a motion to amend the operative complaint on May 20, 2021.  (ECF No. 137.)

## II.  THE AMENDED COMPLAINT

Hari's amended complaint is 26 pages long and asserts a number of claims, which seem largely derived from her review of discovery provided to her in *United States v. Hari I* and/or *United States v. Hari II*.  These claims are not listed in count format.  The Court summarizes the amended complaint as follows[4]:

### A.  Claims Asserted

Hari alleges that Sherburne County Defendants, Federal Defendants, Visel, as well as unnamed and/or unknown county correctional officials, Federal Bureau of Investigation ("FBI")  officials and United States Marshals, engaged in a conspiracy to violate her rights under the First, Fourth, and Sixth Amendments, and that seven of the Federal Defendants also violated federal and state wiretapping laws, 18 U.S.C. § 2511 and Minn. Stat. § 626A.02, subd. 5.  (*See generally* Am. Compl., ECF No. 47.)  These events happened while Hari was in custody in Illinois at the Livingston and Kankakee County Jails, or in custody in Minnesota at the Anoka and Sherburne County Jails, awaiting trial on her criminal cases.

---

[4] Because Hari has effectively filed a notice of dismissal as to her claims against the Anoka County Defendants, *see infra* Section III.A.2, the Court does not summarize the claims articulated against Anoka County Defendants in the amended complaint.

(*Id.* ¶ 5.)

Hari generally alleges that the acts committed by Defendants "were the result of willful and wanton misconduct" and that the violations described "were intentionally committed against statutory and constitutional rights [] clearly established at the time of the violation." (*Id.* ¶ 3.) Hari seeks injunctive and monetary relief, including nominal, compensatory, and punitive damages. (*Id.* ¶ 1.) She states that "[n]o claim" in the amended complaint "should be interpreted as seeking damages for any mental or emotional injury." (*Id.*)

Except for the wiretapping claims, Hari makes her claims pursuant to 42 U.S.C. § 1983 against certain Defendants and makes claims against certain Federal Defendants under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*Id.*) Hari brings *Bivens* claims against Federal Defendants Carroll, Kane, Arden, Smith, Akens, Hull, Huse, Gena, as well as Kane's unknown supervisor and other unknown FBI agents and United States Marshals, for violation of her First, Fourth, and Sixth Amendment rights "for interfering with [her] attorney communication." (*Id.*; *see also id.* ¶ 11.) These individuals are sued in their individual capacities only. (*Id.* ¶ 11.)

Hari brings a Section 1983 claim against Sherburne County Sheriff Joel Brott in his individual and official capacities. (*Id.* ¶ 8.) She states that certain official policies, practices, or customs of the Sherburne County Jail "caused some of the violations and injuries." (*Id.*) Specifically, she states that while she was housed in the Sherburne County Jail, she was refused a private telephone so she could speak with her attorneys "outside the hearing of other inmates or staff." (*Id.*) She further alleges that the attorneys working on

6

her case in the Central District of Illinois were not able to travel the more than 500-mile distance to personally meet with her while she was in the Sherburne County Jail, and thus they were not able to confer with Hari while she was in custody at that location. (*Id.*) She does, however, state that according to official policy, she was still able to communicate with her attorneys by mail. (*See id.*) Hari also brings Section 1983 claims against Beaumaster, Clem, Sieg, and Thiel in their individual and official capacities for various violations of her First, Fourth, and Sixth Amendment rights related to a number of instances she alleges constituted impermissible interference with her "attorney and other privileged communication." (*See id.* ¶ 1.) Hari further claims that Federal Defendants Robbins and Westby, as well as Visel, were state or local officials acting under color of state law when they violated her rights, and thus are being sued pursuant to Section 1983. (*Id.* ¶¶ 2, 10.) She brings her claims against Robbins and Visel in their individual and official capacities. (*Id.* ¶ 10.)

### B. Conspiracy Allegations

Hari alleges that there is a basis for a claim of civil conspiracy against Defendants—under Section 1983 for any state or local Defendant, and under the *Bivens* doctrine for certain Federal Defendants. (*Id.* ¶ 4.) She alleges every Sherburne County Defendant, Federal Defendant, and Visel were members of this conspiracy, along with other unknown individuals. (*Id.* ¶ 4.) For those members acting outside the State of Minnesota, Hari alleges that those persons acted "with a purposeful connection to Minnesota, which was the violation of 6th and 1st Amendment rights in order to effect the transmission of privileged material to Minnesota, and significant contacts in Minnesota which included co-

conspirators in Minnesota." (*Id.* ¶ 2.)

She alleges that the "purpose" of the conspiracy was the collection of her "privileged communications" in violations of her First, Fourth, and Sixth Amendment rights. (*Id.* ¶ 4.) Overt acts included "the collection, reading, copying, recording, screening, dissemination, and use of . . . privileged information to [her] injury." (*Id.*)

Hari provides that all county and local conspirators "were linked in a single conspiracy" when they agreed to provide her privileged communications "to a law enforcement central hub." (*Id.*) This began "not later than May 27, 2018," when Robbins and Visel "agreed to summarize and collect attorney client phone call recordings and provide them to federal authorities with the assistance of county corrections officials." (*Id.*) The conspiracy allegedly continued "at least through January 2020" when unnamed corrections officials at Sherburne County "were intercepting privileged communications" and providing those communications to Federal Defendant Kane. (*Id.*)

According to Hari, Sherburne County Defendants Clem, Thiel, and Sieg, as well as Federal Defendant Westby, agreed "to read, review, scan, collect, record or transmit privileged legal or court communications including telephone calls and letters" or "personally gave specific supervisory approval for those acts or for the policies that lead directly to the commission of th[o]se acts." (*Id.*) "Some" of Hari's privileged information was then provided to "other members of the conspiracy" who were part of a "hub" of federal law enforcement working primarily in Brooklyn Center, Minnesota. (*Id.*) At that hub Federal Defendants Carroll, Kane, Arden, Smith, Akens, Hull, Huse, and Gena, as well as other unknown federal agents, "agreed to receive, collect, summarize, transmit, analyze,

or decode privileged legal communications" or otherwise gave "supervisory approval" for those acts. (*Id.*)

Hari alleges the members of the conspiracy interfered with her "correspondence to the courts and elected officials." (*Id.*) Unnamed members of the conspiracy recorded "repeated batches" of her phone calls with her attorneys while she was in custody in Kankakee County and Livingston County, Illinois, and those calls were summarized, recorded, analyzed, and then transmitted to Minnesota and other locations. (*Id.*) Unnamed conspiracy members also seized letters from Hari to her attorneys at the courthouse in Urbana, Illinois, and from the Anoka County Jail. (*Id.*) These letters were transmitted to other conspiracy members in Minnesota and other locations, and were given to an FBI cryptographer so they could be further analyzed. (*Id.*)

### C. Additional Facts Alleged

Hari claims that written notices at the Livingston and Kankakee County jails, as well as recorded notices on those phone lines, made clear that calls with attorneys were not to be recorded. (*Id.* ¶ 14.) Nevertheless, on September 9, 2019, Hari was provided with discovery documents, and found summaries of telephone calls she made to two of her attorneys. (*Id.*) She further learned from these documents, and from other disclosures made by prosecutors, that from March 13, 2018, through as late as October 2018, law enforcement had "collected and reviewed recordings of inmate phone calls." (*Id.*) "Some" of these recordings were calls between Hari and her attorneys. (*Id.*) Hari alleges Arden (located in Brooklyn Center, Minnesota), Gena (location unknown), Smith (located in Illinois), Visel (of the University of Illinois Police), and Robbins (also of the University of

Illinois Police) participated in "telephone interception activity."  (*Id.*)

No later than May 27, 2018, the FBI became aware that her attorney phone calls were being collected by the Kankakee County Jail telephone system.  (*Id.*)  On that date, Visel's summaries of phone calls, as well as a report, were provided to Gena and to Robbins for her approval.  (*Id.*)  Visel's "summary of the calls includ[ed] the fact that a privileged attorney phone call to the Federal Public Defender was recorded on 5/16/18 at 16:34:24."  (*Id.*)  Hari alleges that notwithstanding this fact, Gena approved Robbins' report, "and collection of privileged phone calls continued at least through" July 31, 2018.  (*Id.*)

Subsequent reports authored by Visel contained "summaries reporting the recording of attorney client calls."  (*Id.*)  These reports were reviewed by Robbins and approved by Huse and Aken.  (*Id.*)  Visel allegedly "recorded collection of at least eight additional calls" Hari made to the Federal Public Defender's Office.  (*Id.*)  Smith reviewed certain calls during this period, and a report from January 2019 included information "concerning the content of a call" made on March 14, 2018.  (*Id.*)  Arden also wrote summaries of calls, though only Visel "reported the recorded attorney calls in these provided summaries."  (*Id.*)  Hari alleges she received copies of phone calls in the discovery process, but that recording of phone calls between her and her attorneys were not provided by prosecutors.  (*Id.*)

Hari drafted a letter to her attorney, Shannon Elkins, addressing these violations on January 2, 2020.  (*Id.* ¶¶ 14, 16.)  After, Julie Allyn, a prosecutor in *United States v. Hari I*, called Elkins, and, according to Hari, "'disclosed' to her that these calls had been recorded, along with additional . . .  undisclosed calls intercepted from a second jail phone system at Livingston County, Illinois."  (*Id.* ¶ 14.)  Smith obtained access to calls from the

Livingston County Jail in September 2018. (*Id.*) Arden at some point made a report about these calls, and Carroll summarized calls between Hari and her attorney. (*Id.*) An email between Hull and Kane demonstrated that "Kane had provided the recordings of Hari's phone calls, including recordings of attorney-client conversations[,] to Hull with her recommendation that he listen to them and content of earlier recorded phone calls." (*Id.*)

Hari also alleges that she "relied upon the jail phone call policies and the law to expect that [her] attorney phone calls would not be intercepted." (*Id.*) After learning of the possible recording and summarization of these calls, however, Hari claims she was discouraged from using telephones at jails to communicate with her attorneys "for fear of being monitored by the FBI." (*Id.*) As a result, she claims her "communication with [her] legal team was chilled." (*Id.*)

Hari alleges that on or about July 27, 2018, two unknown U.S. Marshals seized a letter, properly marked as legal mail and addressed to her attorney, from Hari while she was in court in Urbana, Illinois. (*Id.* ¶ 18.) According to Hari, this letter was copied and distributed to the FBI, and officials transmitted the letter to Brooklyn Center, Minnesota. (*Id.* ¶ 18.) Privileged information "derived from the letter" was also disseminated from the United States Marshal Service to the Sherburne County Jail, Anoka County Jail, and Kankakee County Jail. (*Id.*) She states that prior to this incident she "believed and expected that the confidentiality and privilege of properly labeled attorney communication caried to court on [her] person would be honored based upon law and previous experience." (*Id.*) After, however, she "was discouraged from carrying privileged notes to court," and "[the] incident chilled the communication between [her] and the legal defense team and

interfered with [her] ability to contribute to [her] defense by bringing legal notes to the courthouse." (*Id.*)

Hari also details that reports she received in discovery show that Kane submitted an encrypted letter she wrote to her attorney to the FBI cryptology lab in June of 2019. (*Id.* ¶ 15.) This letter was noticed on Hari's desk during a cell search while she was housed in the Anoka County Jail that same month. (*Id.*) Hari alleges that Kane sent Hall recordings of Hari's phone calls with her attorneys to assist in the decryption. (*Id.*) According to Hari, "[p]ortions of the letter demonstrating that it was attorney client mail were deleted from provided scans although they were part of the letter at the time of scanning, and the scanned document from the FBI does match the letter sent by Hari to [her] attorney." (*Id.*)

Hari was later housed at the Sherburne County Jail. Beginning in October 2019, she noticed that "privileged" mail sent from the jail to the United States District Court for the District of Minnesota was being postmarked "long after" she placed it in the outgoing mail, and that the mail was postmarked with Minneapolis postmarks as opposed to Elk River postmarks. (*Id.* ¶ 20.) According to Hari, sometimes these letters arrived at the clerk's office with missing pages or with pages mixed from different letters, even though the letters had been sealed by jail staff in front of Hari. (*Id.*) Other mail arrived with glue or taped flaps, even though inmates are not provided with either tape or glue. (*Id.*) Hari alleges Sieg provided otherwise undescribed "privileged documents" to Kane. (*Id.*)

Hari alleges that she attempted to send a privileged letter to a civil attorney, and that this letter was "slowly and deliberately read" by Sherburne County Jail Officer Beaumaster on December 6, 2019. (*Id.*) Hari told Beaumaster repeatedly it was privileged legal mail,

but Beaumaster read the complete letter before returning it to Hari to seal. (*Id.*) Hari filed a grievance detailing this interaction. (*Id.*)

Hari also alleges that on December 17, 2019, Clem, Thiel, and Wetterhahn[5] conducted a search of her cell and "focused on reading legal materials, primarily correctly labeled and identified correspondence between Hari and [her] attorneys" as well as "notes prepared for [her] attorneys." (*Id.* ¶ 22.) These individuals also flipped through discovery materials. (*Id.*) Thiel allegedly told Clem not to be intimidated by the fact that Hari had filed a grievance about the reading of her legal material, encouraged Clem to search more diligently since Hari "seemed to be sensitive about [her] legal material and was likely to be hiding something in it," and told Hari that she could not prevent jail officials from reading materials in her cell "just by marking it legal." (*Id.*)

In January of 2020, Hari noticed that the computer in the unit she was housed in at the Sherburne County Jail had software which permitted remote access to the computer, autosaving of files, and an additional security feature called Access Monitor. (*Id.* ¶ 16.) Hari alleges that there was an increase in administrative logins on this computer while she was using it to view discovery and write correspondence and privileged legal notes to her defense attorneys. (*Id.*) According to the amended complaint, Access Monitor was not used during an interim period while Hari was housed in the Anoka County Jail but resumed and was used frequently when she returned to Sherburne County. (*Id.*) Hari alleges that unnamed officials at Sherburne County Jail were logging remotely onto the computer while

---

[5] Wetterhahn is not party to this suit. Hari alleges that "Wetterhahn's involvement was limited to watching." (*Id.* ¶ 22.)

she used it, and that a letter she drafted on this computer and printed was actually what prompted Allyn to contact Elkins to disclose that certain calls had been recorded. (*See id.* ¶ 16.)

Hari also alleges that in February of 2020, a flash drive containing "highly sensitive attorney client communication" was tampered with at the Sherburne County Jail in violation of jail policy. (*Id.* ¶ 16.) According to Hari, on two dates, files disappeared from a flash drive and a software notification indicated that a user other than Hari had altered the files since she had last accessed them. (*Id.*) Hari alleges a Sherburne County Jail official with access to the administrative password would have altered the files, because there are only two users on the computer system—a jail user used by inmates, and an "admin" user available to certain staff members. (*Id.*)

Hari further alleges that her flash drive was found plugged into the computer by another inmate, which permitted access by inmates or staff "to a large quantity of lawyer-client communication." (*Id.*) And, the computer "auto-saved" certain files containing privileged attorney-client correspondence on another inmates' flash drive on three occasions, which "demonstrate[s] that the computer was retaining copies of saved files after [Hari's] use of the computer and removal of the flash drive." (*Id.*)

Hari alleges that prior to these incidents she relied upon Sherburne County Jail policy, including a Flash Drive Policy Statement, in addition to the law, "expecting that legal materials on the flash drive would not be copied, reviewed outside [her presence], made available to other inmates, or otherwise disseminated." (*Id.* ¶ 17.) After the incidents, however, Hari "was discouraged from using the computer for the most sensitive

research and writing, and the actions of the Sherburne County Defendants chilled the communication between [her] and the legal defense team and interfered with [her] ability to contribute to [her] defense by viewing and making notes on the evidence against [her] using the computer." (*Id.*)

Finally, on March 16, 2020, Hari alleges an open envelope was delivered to her by Sherburne County Jail staff, which contained "privileged communication" from the United States District Court for the Central District of Illinois. (*Id.* ¶ 23.) There was a post-it-note on the letter explaining it had been opened prior to delivery. (*Id.*) Hari alleges prior to this incident, as well as the letter-reading incident on December 6 and the cell search on December 17, she "expected" based on jail policy, the Sherburne County Jail Handbook, and the law "that the privilege and confidentiality of legal materials stored in [her] cell at Sherburne County Jail and legally privileged materials put into the Sherburne County Jail mail would be respected." (*Id.* ¶ 24.) After these incidents, however, she "was concerned that legal mail and notes would not be handled correctly," and the actions of Sherburne County officials "contributed to a chilling of attorney-client communication and interfered with [her] ability to contribute meaningfully to [her] own defense." (*Id.*)

### D.  Exhibits

Hari filed a number of exhibits with her original complaint (*see* ECF Nos. 1-1; 1-2; 1-3.) and incorporates them by reference throughout the amended complaint. (*See generally* ECF No. 47.) These exhibits appear to be computer information from when Hari was at the Sherburne County Jail, requests and grievances filed by Hari and their corresponding responses, letters to the clerk of court in this district, an email, and affidavits

from an individual who was incarcerated at Sherburne County Jail at the same time as Hari. (*Id.*)

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the court generally must ignore materials outside the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Courts may, however, "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned[] without converting the motion [to dismiss] into one for summary judgment." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quotation omitted); *see, e.g.*, *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1150-51 (8th Cir. 2012); *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004). "[T]he court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003) (quotation omitted). Defendants do not challenge these exhibits as outside the pleadings, and the Court will consider them as embraced by the amended complaint.[6]

---

[6] The Court does not consider the supplemental exhibits Hari filed in support of her motion for leave to amend the operative complaint. (ECF No. 139.)

### III.  MOTIONS TO DISMISS

**A. Sherburne County Defendants' First Motion to Dismiss, Anoka County Defendants' Motion to Dismiss, and Hari's Motion to Dismiss**

#### 1.  Sherburne County Defendants' First Motion to Dismiss

Hari amended her complaint as a matter of course following the filing of this motion. (ECF No. 47.)  "Ordinarily the filing of an amended complaint renders moot a Rule 12(b)(6) motion to dismiss the original complaint." *Crandall v. Miller & Stevens, P.A.*, No. 20-cv-1793 (ECT/LIB), 2020 WL 6158214, at *2 (D. Minn. Oct. 21, 2020) (citing *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002)).  On occasion, particularly where the parties agree to the approach, a court will construe a pending motion as the motion to dismiss the amended complaint.  *See Manos v. Fed. Bureau of Prisons*, No. 18-cv-427 (PJS/HB), 2019 WL 1494604, at *2 (D. Minn. Mar. 11, 2019), *report and recommendation adopted*, 2019 WL 1491789 (D. Minn. Apr. 4, 2019).

The record supports denying Sherburne County Defendants' original motion as moot and proceeding on their more recent motion.  Sherburne County Defendants will not be prejudiced by the denial of the original motion, as they quickly filed a second motion to dismiss in response to the now-operative amended complaint.  (ECF No. 65.)  The Court thus recommends denying Sherburne County Defendants' motion to dismiss the complaint and considers its motion to dismiss the amended complaint below.

#### 2.  Anoka County Defendants' Motion to Dismiss and Hari's Motion to Dismiss "Rasmussen Claims"

As noted above, in *Hari II* the Court granted leave for plaintiffs to file a second amended complaint, which added a claim against Anoka County Defendant Deputy Jesse

Rasmussen for an alleged seizure of Hari's legal mail while she was detained at the Anoka County Jail. (*Hari II*, ECF No. 303.) The Court permitted this amendment, and Plaintiffs filed a second amended complaint detailing those claims on March 16, 2021. (*Hari II*, ECF Nos. 303; 311.)

So, when Anoka County Defendants filed a motion to dismiss in this case, Hari responded with a motion of her own. She requests the Court enter an order "with the effect that the Anoka County Defendants will no longer be parties to this lawsuit" as the claim would be addressed via the second amended complaint in *Hari II*. (ECF No. 78 at 1.) In responding to Anoka County Defendants' motion to dismiss, she further argues there is "no reason" for the claims against Anoka County Defendants "to be pursued in this lawsuit." (ECF No. 116 at 4.) Anoka County Defendants thus ask the Court to construe Hari's motion as a voluntary notice of dismissal pursuant to Federal Rule of Civil Procedure 41 and to dismiss them from this lawsuit. (ECF No. 126 at 2-4.)

Rule 41(a)(1) states, "an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs." Fed. R. Civ. P. 41(a)(1). "Because the rule permits dismissal as of right, it requires only notice to the court, not a motion, and permission or order of the court is not required." *Safeguard Bus. Sys., Inc. v. Hoeffel*, 907 F.2d 861, 863 (8th Cir. 1990) (citations omitted).

Though Hari does not cite to Rule 41, the Court will construe her motion as a notice of voluntary dismissal under Rule 41(a)(1). *See Ventura-Vera v. Dewitt*, 417 F. App'x 591, 591-92 (8th Cir. 2011) (construing pro se plaintiff's motion to dismiss as a notice of

voluntary dismissal). Considering the totality of Hari's filings in this case,[7] as well as the fact that the Court has permitted Hari to bring these claims in another case with Anoka County Defendants, it is clear she wishes to litigate her claims against the Anoka County Defendants in a separate matter. *Cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Hari has the right to voluntarily dismiss her claims and needs no permission from this Court to do so. The Court therefore recommends that Anoka County Defendants be dismissed from this action, and both motions be denied as moot.[8]

## B. Remaining Motions to Dismiss

The remaining Defendants—Sherburne County Defendants, Federal Defendants, and Visel—assert various reasons why Hari's amended complaint should be dismissed. The Court addresses these below.

### 1. Allegations Considered

As an initial matter, in response to Defendants' motions to dismiss, Plaintiff has included a number of new factual allegations (*See, e.g.*, ECF No. 120 at 14, 16, 19-20.) Defendants assert that these allegations are not properly before the Court and request that they not be considered. (*See, e.g.*, ECF No. 147 at 6.)

"[I]t is axiomatic that a complaint may not be amended by the briefs in opposition

---

[7] This includes Hari's request to "[d]elete all references to former Anoka County Defendants," which she made when filing her motion to amend the operative complaint. (ECF No. 137 at 2.)

[8] Dismissal of these claims is without prejudice. *See* Fed. R. Civ. P. 41(a)(1)(B). Hari, however, would likely be barred from bringing these claims again on the basis of res judicata. "Res judicata bars a party from asserting a claim in court if three requirements are met: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the decision was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases." *United States v. Brekke*, 97 F.3d 1043, 1047 (8th Cir. 1996). Though not a final judgment, the Court has addressed these claims in its Report and Recommendation in *Hari II*. (*Hari II*, ECF No. 420.)

to a motion to dismiss." *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (quotation omitted). "Any allegations made in subsequent legal memoranda cannot correct inadequacies within a complaint." *Tuttle v. Lorillard Tobacco Co.*, 118 F. Supp. 2d 954, 959 (D. Minn. 2000). "To hold otherwise would mean that a party could unilaterally amend a complaint at will." *Morgan Distrib. Co.*, 868 F.2d at 995 (citation omitted). The Court does not consider new factual allegations included in Hari's memoranda.

### 2. Personal Jurisdiction

Federal Defendants argue that the Court lacks personal jurisdiction over Nathaniel D. Gena in his individual capacity. (ECF No. 92 at 38-42; ECF No. 147 at 15-16.) Visel also claims that the Court lacks personal jurisdiction over her. (ECF No. 101 at 11-17; ECF No. 148 at 7-10.)

To survive a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), a "plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts to support a reasonable inference that the defendants can be subjected to jurisdiction within the state." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011) (internal quotation and alteration omitted). While "the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." *Id.* at 592 (internal quotations and citations omitted). Additionally, as in this case where the Court has not held an evidentiary hearing, "the court must view the evidence in the light most favorable to the plaintiff and resolve all factual

conflicts in the plaintiff's favor." *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996); *Fastpath, Inc. v. Arbela Techns. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). However, "[t]he party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." *Epps v. Stewart Inform. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003) (citations omitted).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). "This is because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting Fed. R. Civ. P. 4(k)(1)(A)).

"Where a federal court's subject matter jurisdiction over a case arises from the existence of a federal question, the court may exercise personal jurisdiction over a defendant if the plaintiff has properly served the defendant with process under the forum state's long-arm statute and if the defendant has sufficient contacts with the forum state to satisfy procedural due process." *Enterprise Rent-A-Car Co. v. U-Haul Int'l, Inc.*, 327 F. Supp. 2d 1032, 1036 (E.D. Mo. 2004) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104-05 (1987)) (additional citation omitted); *see Walden*, 571 U.S. at 283 ("The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts.") (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). Minnesota's long-arm statute

21

confers jurisdiction to the fullest extent permitted by the Due Process Clause, and thus the inquiry centers on whether personal jurisdiction over a particular person or entity comports with due process. *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006); *see also Enterprise Rent-A-Car*, 327 F. Supp. 2d at 1036.

"Due process mandates that jurisdiction be exercised only if [a] defendant has sufficient 'minimum contacts' with the forum state, such that summoning the defendant to the forum state would not offend 'traditional notions of fair play and substantial justice.'" *Digi-Tel Holdings*, 89 F.3d at 522 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Sufficient minimum contacts requires some act by which the defendant purposefully avails [himself or herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Fastpath, Inc.*, 760 F.3d at 821 (internal quotation marks omitted). Due process therefore "requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The Eighth Circuit employs a five-factor test in determining whether the exercise of personal jurisdiction would pass constitutional muster. *Peterson v. Wallace*, 622 F. Supp. 2d 791, 797 (D. Minn. 2008). The five factors a court considers are: "1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties." *Fastpath*, 760 F.3d at 821. "While

the first three factors are of primary importance, and the last two factors are secondary, courts must look at [] all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists." *Westley v. Mann*, 896 F. Supp. 2d 775, 790-91 (D. Minn. 2012) (citing *K-V Pharm. Co.*, 648 F.3d at 592-93) (additional citation omitted). "The third factor distinguishes between specific and general jurisdiction." *Peterson*, 622 F. Supp. 2d at 797 (citing *Digi-Tel*, 89 F.3d at 523 n.4) (additional citation omitted).

"General personal jurisdiction requires that a defendant's contacts with the forum state be 'so continuous and systematic as to render [the defendant] essentially at home in the forum State." *Laver v. Peal*, 516 F. Supp. 3d 931, 934 (D. Minn. 2021) (quoting *Daimler*, 571 U.S. at 127) (internal quotation marks omitted). On the other hand, "[s]pecific personal jurisdiction exists when the cause of action arises out of or is related to a defendant's activities within the forum state and the defendant purposefully avails [themself] of the privilege of conducting activities within the forum state." *Id.* (citing *Burger King*, 471 U.S. at 472).

Hari asserts various arguments that the Court has personal jurisdiction over Gena and Visel. (*See* ECF No. 120 at 28-32; ECF No. 117 at 5-10.) These arguments fail, and Hari has not met her burden of making a prima facie case for jurisdiction over either Defendant.

### a.  General and Specific Jurisdiction

Gena has never owned or rented property in Minnesota, been employed in Minnesota, paid income taxes in Minnesota, or visited Minnesota. (ECF No. 93 ¶¶ 5-8.) Similarly, Visel has never paid taxes in Minnesota, held a bank account or direct

investment in Minnesota, been employed in Minnesota, or employed a Minnesota resident. (ECF No. 102 ¶¶ 10-12.) She has never been registered to vote in this state, and has only been to Minnesota on one occasion, for a sporting event in 2018. (*Id.* ¶ 9, 15.) The record before the Court does not establish that Gena or Visel had the "continuous and systemic contact with Minnesota that [they] essentially would be at home," and thus the Court does not have general personal jurisdiction over either Defendant. *Laver*, 516 F. Supp. 3d at 935 (citing *Daimler*, 571 U.S. at 134).

The Court thus looks to specific personal jurisdiction. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283-84 (internal quotation omitted). Further, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State." *Id.* at 285; *see also Peterson*, 622 F. Supp. 2d at 797 (in analyzing whether specific personal jurisdiction exists, the Court considers whether defendants "purposely directed [their] activities at residents of Minnesota and whether the present litigation results from alleged injuries that arise out of or relate to those activities.").

Looking to the amended complaint and viewing the record before the Court in the light most favorable to Hari, she has failed to allege facts sufficient to demonstrate either Gena or Visel took action in or directed actions to Minnesota. While Hari alleges that Gena participated in "telephone interception activity," she also notes that his location was unknown. (Am. Compl. ¶ 14.) She also alleges that Visel provided summaries of her phone calls to Gena, but that Visel was located in Illinois at the time. (*Id.*) The amended

complaint also notes that Visel took her actions while working for the University of Illinois Police Department and that she allegedly interfered with privileged communications Hari made while in custody in Illinois.  (*Id.* ¶¶ 4, 10.)

Hari asserts in her response to these Defendants' motions to dismiss that each made sufficient contacts with Minnesota by virtue of their general participation in the investigation related to *United States v. Hari I*.  (*See* ECF No. 120 at 28 (arguing Gena made sufficient contacts "through his supervisory role in . . . approving the reports of the recording and summarizing" of Hari's privileged phone calls, which was part of the investigation); ECF No. 117 at 5-6 (arguing that Visel's "recording, collecting, reporting, on, and summarizing" of her calls were part of the investigation in Minnesota and that some of these calls were made from Hari in Illinois to her counsel in Minnesota).)  Hari, however, acknowledges herself that Visel's participation in the case ended when she submitted reports to Robbins, who was also located in Illinois.  (*See* ECF No. 117 at 7-8.)  And, in the case of both Defendants, she does not allege sufficient facts to suggest either's contact with Minnesota resulted "from more than random, fortuitous, or attenuated happenings." *Laver*, 516 F. Supp. 3d at 935 (citing *Burger King*, 471 U.S at 475).

Thus, considering the five factors outlined in *Fastpath* and the facts outlined above, Gena and Visel have made little or no contact with the State of Minnesota, and any contacts made related to this cause of action were random, fortuitous, or attenuated.  The remaining two factors, which are secondary, do not weigh in favor of the exercise of personal jurisdiction over Gena or Visel.  This state's interest in providing a forum "cannot make up for the absence of minimum contacts." *Digi-Tel Holdings, Inc.*, 89 F.3d at 525.  Nor is

Minnesota a convenient forum for Gena or Visel.  Hari has thus failed to establish the Court

has either general or specific personal jurisdiction over these two Defendants.  *See, e.g.*,

*Walden*, 571 U.S. at 286-87.

### b.  Conspiracy Jurisdiction

Finally, Hari alleges that Gena and Visel's participation in the alleged conspiracy

creates a basis for this Court to exercise jurisdiction.  (ECF No. 117 at 7-10; ECF No. 120

at 29-31; *see also* Am. Compl. ¶¶ 2, 4.)  In *Hunt v. Nevada State Bank*, 172 N.W.2d 292,

311 (1969), the Minnesota Supreme Court recognized conspiracy-based jurisdiction.

*Peterson*, 622 F. Supp. 2d at 800.  As a court in this district has recently summarized:

> Federal courts in this district and elsewhere seem to apply
> consistent rules to determine whether a plaintiff has shown that
> exercising conspiracy-based personal jurisdiction comports
> with due process.  Conspiracy-based personal jurisdiction
> requires (1) the existence of a conspiracy; (2) the nonresident's
> participation in or agreement to join the conspiracy; and (3) an
> overt act taken in furtherance of the conspiracy within the
> forum's boundaries.

*DURAG Inc. v. Kurzawski*, No. 17-cv-5325 (ECT/HB), 2020 WL 2112296, at *5 (D. Minn.

May 4, 2020) (collecting cases) (internal quotation marks omitted).

As discussed below, Hari has not adequately pleaded the existence of a conspiracy

to interfere with her constitutional rights.  *See infra* Section III.B.5.b.  The alleged facts

that the parties entered into an agreement amount only to legal conclusions.  (*See, e.g.*, Am.

Compl. ¶ 4.) This is insufficient to establish conspiracy-based jurisdiction.  *See DURAG*

*Inc.*, 2020 WL 2112296, at *5 ("As with any complaint or legal argument, 'bald speculation

or a conclusory statement that individuals are coconspirators is insufficient to establish

personal jurisdiction under a conspiracy theory.'") (quoting *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1097 (D.C. Cir. 2008)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint will not suffice "if it tenders 'naked assertion[s] devoid of 'further factual enhancement.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

In addition, "a showing of minimum contacts is not unnecessary when a conspiracy with Minnesota effects is alleged and the allegation of such a conspiracy does not satisfy the minimum contacts test itself." *Peterson*, 622 F. Supp. 2d at 801 (citation omitted). Hari alleges that Visel, as a local police officer in Illinois, agreed to provide privileged communications to a law enforcement central hub. (Am. Compl. ¶ 4.) The only specific allegation concerning Visel, however, is that she agreed to summarize and collect recordings from Illinois jails along with Robbins for federal agents, and that certain summaries authored by Visel were sent to Robbins and eventually to Gena. (*Id.* ¶¶ 4, 14.) The approval of Robbins' reports seems to be the only specific facts alleged regarding Gena. (*See id.*) Hari ties none of these actions, nor Gena and Visel personally, to overt acts in Minnesota, except to allege that other federal law enforcement officials in Minnesota received reports. As discussed above in this Court's analysis of specific jurisdiction, any inadvertent contact Gena and Visel had with Minnesota is an insufficient basis for the exercise of personal jurisdiction. Thus, conspiracy-based personal jurisdiction does not apply in this case.

In conclusion, Har has failed to make a prima facie case that this Court has personal jurisdiction over Gena or Visel. *See K-V Pharm. Co.*, 648 F.3d at 591-92. On this basis, the Court recommends that claims against both Gena and Visel be dismissed.[9]

### 3. Subject Matter Jurisdiction

Federal Defendants argue that the Court lacks subject matter jurisdiction over Section 1983 claims Hari asserts against Robbins and Westby.[10] (ECF No. 92 at 35-38.) The Court agrees.

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks and citations omitted). Subject matter jurisdiction is thus "a threshold requirement which must be assured in every federal case." *Turner v. Armontrout*, 922 F.2d 492, 493 (8th Cir. 1991). When determining a Rule 12(b)(1) motion, courts "must distinguish between a 'facial attack' and a 'factual attack' on jurisdiction." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quoting *Osborn v. United States*, 918

---

[9] The Court notes that both Gena and Visel seek dismissal of Hari's claims on other legal bases, such as a lack of remedy under *Bivens*, qualified immunity, and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See, e.g.*, ECF No. 92 at 11-35; ECF No. 101 at 17-30.) Without jurisdiction over these Defendants, however, "the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quotation omitted). Because the Court lacks personal jurisdiction over Gena and Visel, the Court is precluded from considering issues of law, and does not reach these arguments as to these Defendants. *See Yellow Brick Road, LLC v. Childs*, 36 F. Supp. 3d 855, 868 n.7 (D. Minn. 2014) (citing *Steel Co.*, 523 U.S. at 94).

[10] Hari does not make clear in the amended complaint whether she is suing Westby in his individual or official capacity. As a general rule, "in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Hari, however, generally makes clear in the amended complaint that she seeks to sue those she believes were acting under color of state law in both their individual and official capacities. Thus, for the purpose of Federal Defendants' motion to dismiss, the Court analyzes the subject matter jurisdiction question as if Hari's claims were brought against Westby in both capacities.

F.2d 724, 729 n.6 (8th Cir. 1990)). "In a facial attack, 'the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" *Id.* "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.*; *see also Scott v. UnitedHealth Grp., Inc.*, 540 F. Supp. 3d 857, 861 (D. Minn. 2021) ("In a factual challenge, the court does not accept the allegations as true, but instead receives evidence and makes factual findings.") (citing *Osborn*, 918 F.2d at 730).

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of *state* law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Parker v. Boyer*, 93 F.3d 445, 447-48 (8th Cir. 1996) (quoting *West v Atkins*, 487 U.S. 42, 49 (1988)) (emphasis added). Section 1983 "is inapplicable when a person acts under color of federal law." *Jones v. United States*, 16 F.3d 979, 981 (8th Cir. 1994) (citing *Haley v. Walker*, 751 F.2d 284, 285 (8th Cir. 1984)).

This factual attack on jurisdiction requires looking outside Hari's original pleadings, and the Court looks to declarations submitted by Robbins and Westby along with arguments presented in the memoranda. Though employed with the University of Illinois

Police Department, Robbins was federally deputized as a Task Force Officer assigned to the FBI's Joint Terrorism Task Force, and last served on the Task Force from 2016-2018. (ECF No. 94 ¶ 4.)  Her alleged actions in this case all arise from her assigned duties as a Task Force Officer.  (*Id.* ¶ 5.)  Similarly, while Westby is employed with the Hennepin County Sheriff's Office, he was federally deputized as a Task Force Officer and assigned to the FBI's Joint Terrorism Task Force from 2016-2019.  (ECF No. 95 ¶ 4.)  His alleged actions in this case also arise from his assigned duties as a Task Force Officer.  (*Id.* ¶ 6.)

Hari argues that Robbins and Westby's employers, both local agencies, necessarily mean that they were acting under color of state law.  (*See* ECF No. 120 at 23-26.)  But this argument is unpersuasive.  *See Yassin v. Weyker*, No. 16-cv-2580 (JNE/TNL), 2020 WL 6438892, at *4 (D. Minn. Sept. 30, 2020) (collecting cases and writing that the defendant's "employment as a St. Paul police officer,"  amongst other factors, did not "demonstrate defendant was acting under color of state law" when defendant had been "deputized as a member of a federal task force"), *appeal filed*, No. 20-3299 (8th Cir. Nov. 2, 2020). The facts before the Court demonstrate that, notwithstanding their employers, Robbins and Westby were working as FBI Task Force Officers pursuant to federal law when working on Hari's criminal case(s).  Because Robbins and Westby were not acting under the color of state law and were instead acting as deputized federal agents when investigating the criminal case(s) against Hari, the Court lacks jurisdiction over claims asserted against Robbins and Westby in their personal capacities under Section 1983.  These claims should therefore be dismissed with prejudice.  The Court will, however, instead construe Hari's claims against Robbins and Westby in their individual capacities as *Bivens* claims.  *See*

30

*Holmseth v. City of East Grand Forks*, No. 14-cv-2970 (DWF/LIB), 2015 WL 4488424, at *29 (D. Minn. July 23, 2015).

Further, because Robbins and Westby's alleged actions were taken pursuant to federal, and not state law, the Court lacks jurisdiction over Hari's official capacity claims against them.  "It is well settled that 'an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.'"  *Buford v. Runyon*, 160 F.3d 1199, 1201 n.3 (8th Cir. 1998) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  In this instance, that would be the United States.  The United States, however, enjoys sovereign immunity and cannot be sued without its consent.  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  "Sovereign immunity is a jurisdictional doctrine, and the terms of the United States' 'consent to be sued in any court define that court's jurisdiction to entertain the suit.'"  *Brown v. United States*, 151 F.3d 800, 803 (8th Cir. 1998) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)).  And, "Congress has not waived the sovereign immunity of the United States Government, or its agencies, for claims that their employees have violated the Constitution."  *Jackson v. Federal Bureau of Prisons*, No. 06-cv-1347 (MJD/RLE), 2007 WL 843839, at *8 (D. Minn. Mar. 16, 2007) (citations omitted).  Sovereign immunity thus bars these claims, and they should be dismissed with prejudice.

### 4. *Bivens*

Hari brings individual-capacity claims against Federal Defendants Smith, Arden, Kane, Hall, Aken, Huse, and Carroll,[11]  and relies on *Bivens* to support her damages claims

---

[11] Hari also brings *Bivens* claims against Gena.  The Court, however, has already found that it lacks personal jurisdiction over him.  *See supra* Section III.B.2.

against those Federal Defendants.  She alleges that these Federal Defendants have violated her First, Fourth, and Sixth Amendment rights by interfering with her attorney communications, and also that her conspiracy claim falls under the *Bivens* doctrine as to these Defendants.  (Am. Compl. ¶¶ 1, 4.)  As discussed above, the Court also construes Hari's Section 1983 claims against Robbins and Westby in their individual capacities as *Bivens* claims.  *See supra* Section III.B.3.  Federal Defendants ask that these claims be dismissed "as there exists no *Bivens* remedy for the conduct Plaintiff alleges, and the Court should decline to fashion a new one."  (ECF No. 92 at 11.)

"In *Bivens*, the Supreme Court recognized an implied cause of action for damages directly under the authority of the United States Constitution, particularly where there is no statute that otherwise creates a cause of action."  *Pinson v. Hadaway*, No. 18-cv-3420 (NEB/KMM), 2020 WL 6121357, at *8 (D. Minn. July 13, 2020), *report and recommendation accepted*, 2020 WL 5543749 (D. Minn. Sept. 16, 2020).  "[A] *Bivens* action is the federal analog to suit brought against state officials under . . . 42 U.S.C. § 1983."  *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006).

"On only three occasions has the Supreme Court implied a cause of action under *Bivens*."  *Farah v. Weyker*, 926 F.3d 492, 497 (8th Cir. 2019) (citing *Carlson v. Green*, 446 U.S. 14, 16-18 (1980); *Davis v. Passman*, 442 U.S. 228, 248 (1979); *Bivens*, 403 U.S. at 379); *see also Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020).  These three occasions involved a person's Fourth Amendment claim for damages stemming from an unlawful arrest and search (*Bivens*); "a former congressional staffer's Fifth Amendment claim of dismissal based on sex" (*Davis*); and "a federal prisoner's Eighth Amendment claim for

failure to provide adequate medical treatment" (*Carlson*).  *Hernandez*, 140 S. Ct. at 741; *see also*, *e.g.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55 (2017).

"After those decisions, however, the [Supreme] Court changed course." *Hernandez*, 140 S. Ct. at 741.  In *Abassi*, the Supreme Court significantly restricted circumstances in which a *Bivens* action may be brought.  "Expanding *Bivens* is, according to the Supreme Court, 'now a disfavored judicial activity.'"  *Ahmed v. Weyker*, 984 F.3d 564, 567 (8th Cir. 2020) (quoting *Abbasi*, 137 S. Ct. at 1857) (internal quotation marks omitted), *pet. for cert. docketed sub. nom. Mohamud v. Weyker*, No. 21-187 (Aug. 10, 2021).  The Supreme Court "has consistently refused to extend *Bivens* to any new context or new category of defendants' for almost forty years."  *Farah*, 926 F.3d at 498 (quoting *Abbasi*, 137 S. Ct. at 1857); *see also Hernandez*, 140 S. Ct. at 743 ("And for almost 40 years, we have consistently rebuffed requests to add to the claims allowed under *Bivens*.").

The Eighth Circuit instructs that there are two steps to determine whether damages are available to Hari under *Bivens*.  *Farah*, 926 F.3d at 498.  First is to ascertain whether this case "present[s] one of 'the three *Bivens* claims the [Supreme] Court has approved in the past' or whether, instead, allowing [Hari] to sue would require [the Court] to extend *Bivens* to a 'new context'"  *Id.* (quoting *Abbasi*, 137 S. Ct. at 1859-60).  A context is "'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Hernandez*, 140 S. Ct. at 743 (quoting *Abbasi*, 137 S. Ct at 1859).  In its decision in *Abbasi*, the Supreme Court specified that several factors can be considered in deciding whether a case arises in a new context, including:

the rank of the officers involved; the constitutional right at

33

> issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

137 S. Ct. at 1859-60 (emphasizing this list is not "exhaustive"). Though Hari would have the Court look to pre-*Abbasi* cases and other cases from within this Circuit in order to expand the scope of available *Bivens* claims (*see* ECF No. 120 at 7-9), the Court agrees with Federal Defendants that *Abbasi* has generally foreclosed that expansion. (*See* ECF No. 147 at 2 n.1.) Federal Defendants correctly point out that the *Abbasi* Court made clear that this Court can look only to the three Supreme Court cases which previously provided a remedy under the *Bivens* doctrine. *See* 137 S. Ct. at 1849 ("If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new."); *accord Farah*, 926 F.3d at 498.

Hari's First and Sixth Amendment claims, as well as her conspiracy claims, seek to apply *Bivens* in a new context because they put new constitutional rights at issue and are clearly distinguishable from *Bivens*, *Davis*, and *Carlson*. The same is true of Hari's Fourth Amendment claims. As the Supreme Court has noted, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743; *see also McKinney v. United States*, No. 17-cv-4156, 2021 WL 3856132, at *6 (D. Minn. Aug. 27, 2021) ("Courts do not define a *Bivens* cause of action at the level of the Fourth Amendment or even at the level of the unreasonable-searches-and-seizures clause.") (internal quotation

omitted).

Though *Bivens* involved a claim under the Fourth Amendment, it arose in the context of federal narcotics agents executing a warrantless search and making an illegal arrest inside the plaintiff's home. *See* 403 U.S. at 389. This is meaningfully different from Hari's claim that Federal Defendants interfered with communications with her attorneys while she was housed in various county jails awaiting trial. *See Farah*, 926 F.3d at 499 (finding the plaintiffs' Fourth Amendment claims were meaningfully different from the Fourth Amendment claim in *Bivens* in part because "information-gathering and case-building activities are a different part of police work than the apprehension, detention, and physical searches at issue in *Bivens*."); *see also Cantú v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) ("By any measure, [Hari's claim is] meaningfully different from the Fourth Amendment claim at issue in *Bivens*. [She] does not allege [Federal Defendants] entered [her] home without a warrant or violated [her] rights of privacy."), *cert. denied*, 141 S. Ct. 112 (June 15, 2020). In sum, Hari's First, Fourth, and Sixth Amendment claims, as well as her conspiracy claims, all arise under a new context.

Because the Court determines that Hari's claims arise in a new context, it must proceed to the second step and "ask whether any 'special factors counsel[] hesitation' before implying a new cause of action 'in the absence of affirmative action by Congress.'" *Farah*, 926 F.3d at 498 (quoting *Abbasi*, 137 S. Ct. at 1857). In recognizing the Supreme Court's caution in expanding legal liability under *Bivens*, the Eighth Circuit has "adopted a 'presumption against judicial recognition of direct actions for violations of the Constitution by federal officials.'" *Farah*, 926 F.3d at 500 (quoting *Neb. Beef, Ltd. v.*

*Greening*, 398 F.3d 1080, 1084 (8th Cir. 2005)).

Special factors counsel against extending *Bivens* in this case, and the Court concludes that the application of *Bivens* is not warranted. First, there are other remedies available to address Hari's injuries, including grievance procedures within a particular institution and litigating the alleged intrusions into the attorney-client relationship in criminal court, which Hari took full advantage of in *United States v. Hari I.* *See Abbasi*, 137 S. Ct. at 1858 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."). That these remedies do not provide the same form of relief is immaterial. *See Corr. Srvs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001) ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability."); *Farah*, 926 F.3d at 502 ("To the contrary, the [Supreme] Court has since made clear that even remedies that provide *no* compensation for victims and little deterrence for violators . . . trigger the general rule that when alternative methods of relief are available, a *Bivens* remedy usually is not.") (internal quotation omitted).

Second, other economic and governmental concerns identified by *Abbasi* counsel hesitation, including "(1) the cost of defending claims against federal officials; (2) the responsibility of Congress to determine whether monetary and other liabilities should be imposed upon federal actors; and (3) the time, administrative costs, and other resources used during a lengthy period of litigation." *Pinson*, 2020 WL 6121357, at *8 (citing *Abbasi*, 137 S. Ct. at 1856). Here, the extension of *Bivens* in these contexts risks "burdening and interfering with the executive branch's investigative and prosecutorial

36

functions," *Farah*, 926 F.3d at 500, and recognizing such claims could exponentially increase litigation against federal officials investigating crimes. Ultimately, Congress is better suited to provide a damages remedy for Federal Defendants' alleged wrongdoing. *See id.*; *see also Ahmed*, 984 F.3d at 570 ("Congress is usually 'in the better position' to weigh the costs and benefits of creating 'a new substantive legal liability.'") (quoting *Farah*, 926 F.3d at 500).

In conclusion, Hari's *Bivens* claims against Federal Defendants for alleged violations of her First, Fourth, and Sixth Amendment rights through the interference with her attorney communications, as well as a claimed conspiracy to violate those rights, is not recognized, and the Court finds there are special factors weighing against the extension of *Bivens* in these contexts. Thus, Hari's claims for damages arising from these constitutional and conspiracy claims against Federal Defendants in their individual capacities should be dismissed. Further, as discussed above, any surviving official capacity claim against Westby or Robbins would fail under the *Bivens* analysis because the United States has not waived its sovereign immunity. *See Buford*, 160 F.3d at 1203 ("It is well settled that a *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity.").[12]

### 5. Statement of a Claim

The Court now turns to Hari's remaining claims, namely: (1) wiretapping claims

---

[12] Because the Court concludes that Hari's claims cannot proceed against Federal Defendants under *Bivens*, it "need not consider [Federal Defendants'] arguments regarding qualified immunity." *Yassin*, 2020 WL 6438892, at *7 n.4 (citing *Neb. Beef*, 398 F.3d at 1085 ("Because we resolve the instant case on the lack of a *Bivens* remedy, we do not reach the issue of qualified immunity.")).

asserted against certain Federal Defendants; (2) conspiracy claims pursuant to Section 1983 against Sherburne County Defendants; and (3) Section 1983 claims for violation of her rights under the First, Fourth, and Sixth Amendments against Sherburne County Defendants.[13]  The relevant Defendants move to dismiss these claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

In deciding a Rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 680.  In doing so, the court must draw reasonable inferences in the plaintiff's favor. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (citation omitted).  "To survive a 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Metro. Omaha Prop. Owners Ass'n, Inc. v. City of Omaha*, 991 F.3d 880, 884 (8th Cir. 2021) (citation and internal quotations omitted).  Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).  Complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing

---

[13] Hari also alleged civil conspiracy claims against Federal Defendants and Visel, and wiretapping claims against Gena and Visel.  (*See id.* ¶¶ 4, 14.) The Court previously found that it lacks personal jurisdiction over Gena and Visel.  *See supra* Section III.B.2.  It also determined that Hari may not bring a conspiracy claim against the other Federal Defendants pursuant to *Bivens*.  *See supra* Section III.B.4.  It therefore does not consider civil conspiracy claims as pleaded against Federal Defendants and Visel, or wiretapping claims as pleaded against Gena and Visel.

*Twombly*, 550 U.S. at 557) (internal quotation marks omitted); *see also Twombly*, 550 U.S. at 555 (providing that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

In assessing a complaint by a pro se plaintiff, the Court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (quotation and citation omitted); *cf. id.* ("A document filed *pro se* is 'to be liberally construed.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). "If the essence of an allegation is discernible," then the court, in applying a liberal construction to pro se complaints, "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

Despite the liberal construal of such complaints, the pro se plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (citation omitted); *see also Stone*, 364 F.3d at 914-15 (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint."); *Machen v. Iverson*, No. 11-cv-1557 (DWF/JSM), 2012 WL 566977, at *15 (D. Minn. Jan. 23, 2012) ("In granting the deference owed to pro se parties, [the court may not] assume the role of advocate for the pro se litigant."), *report and recommendation adopted*, 2012 WL 567128 (D. Minn. Feb. 21, 2012); *Bracken v. Dormire*, 247 F.3d 699, 705 (8th Cir. 2001) (Arnold, J., dissenting) ("Of course, a *pro se* pleading is not a magic hat out of which a court may

pull any claim it thinks should have been advanced.").  Thus, pro se litigants "must set a claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law."  *Stone*, 364 F.3d at 914 (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)).

### a. Wiretapping Claims

Hari alleges that Federal Defendants Robbins, Carroll, Kane, Arden, Smith, Aken, and Huse,[14] violated federal and state wiretapping acts "for intentionally intercepting, disclosing, and using wire or electronic communication without the permission of either party or a valid law enforcement purpose."  (Am. Compl. ¶ 1.)  The relevant Federal Defendants argue that they are entitled to qualified immunity.  (ECF No. 92 at 20-25.)

As an initial matter, the Court finds that Hari does not plead sufficient facts to allege violations under the wiretapping acts.  18 U.S.C. § 2511 (hereinafter "federal wiretapping act"), is a statute which generally prohibits the intentional interception of wire, oral, or electronic communications, or disclosure of their contents.  18 U.S.C. § 2511(1)(a).  The Minnesota Protection of Communication Act, Minn. Stat. § 626A (hereinafter "MPCA"), is nearly identical to the federal wiretapping act.  *Wilson v. McRae's US Mail Servs. Inc.*, No. 20-cv-1664 (PJS/KMM), 2020 WL 6808861, at *4 (D. Minn. Oct. 20, 2020), *report and recommendation adopted*, 2020 WL 6802395 (D. Minn. Nov. 19, 2020).  Under these statutes, "intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other

---

[14] Again, the Court has previously determined that it does not have personal jurisdiction over Gena or Visel. *See supra* Section III.B.2.

device." 18 U.S.C. § 2510(4); Minn. Stat. § 626A.01, subd. 5.

The federal wiretapping act and MPCA further defines wire and electronic communications as follows:

> "wire communication" means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable or other like connection between the point of origin and the point of reception;
>
> . . . .
>
> "electronic communication" means . . . any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce.

18 U.S.C. § 2510(1), (12); *see also* Minn. Stat. § 626A.01, subd. 3, 14.

Liberally construing the amended complaint, Hari has not pleaded sufficient facts to demonstrate that Robbins, Carroll, Kane, Arden, Smith, Aken, or Huse personally intercepted and/or disclosed wire or electronic communication with the requisite intent and/or knowledge required by the statutes. As best as the Court is able to tell, the communications which Hari alleges were illegally intercepted or disclosed were phone calls she made from various county jails. (*See generally* Am. Compl.) She does not describe with sufficient detail on what dates these interceptions took place nor which Defendants intercepted the communications. And, reviewing the amended complaint as a whole, Hari does not claim that any of these Defendants intercepted the communications personally, but that they instead received copies of certain calls, summarized them, authored reports on them, and sent them to their superiors. (*Id.*)

To the extent Hari alleges that certain of these Defendants disclosed her wire or electronic communications, Hari similarly has not pleaded sufficient facts to establish that they did so with intent or knowledge. In the case of disclosure, Hari must plead that Defendants intentionally disclosed, or endeavored to disclose, the communications "knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication." 18 U.S.C. § 2511(c); *see also Thompson v. Dulaney*, 970 F.2d 744, 749 (10th Cir. 1992) ("[T]o establish liability [for disclosure] a plaintiff must demonstrate a greater degree of knowledge on the part of a defendant."). In short, the amended complaint does not allege sufficient facts to support Hari's claims of violations of the wiretapping acts, and thus the Court recommends their dismissal without prejudice. *See Stringer*, 446 F.3d at 802.

Finding that Hari did not state a claim for which relief could be granted, the Court further finds that these Defendants are entitled to qualified immunity. "Qualified immunity shields government officials from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would know." *Ferguson v. Short*, 840 F.3d 508, 510 (8th Cir. 2016) (citation omitted). This does not require the specific actions in question to have been previously found unlawful, but only that "in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citations and quotations and omitted); *see also Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011) ("A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.") (internal quotation marks and citation omitted). Qualified immunity

has a broad scope, protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In determining whether a government official is entitled to qualified immunity, courts consider "(1) whether the facts alleged, construed in the light most favorable to [the plaintiff], establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that her actions were unlawful." *Keil v. Triveline*, 661 F.3d 981, 985 (8th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "If the answer to either question is no, then the [officials] are entitled to qualified immunity." *Id.* (citing *Pearson*, 555 U.S. at 236). "[C]ourts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Nord v. Walsh Cty.*, 757 F.3d 734, 738-39 (8th Cir. 2014) (quoting *Pearson*, 555 U.S. at 236). Because the Court has concluded that Hari has not pleaded sufficient facts to allege these Defendants violated the wiretapping acts, the Court further finds that they are entitled to qualified immunity.

### b. Conspiracy Claims

Hari alleges that Sherburne County Defendants were part of a civil conspiracy to deprive her of her constitutional rights, and that she may pursue a civil conspiracy claim against them pursuant to Section 1983. (Am. Compl. ¶ 4.) Sherburne County Defendants argue that she fails to state a viable claim. (ECF No. 68 at 19-20.)

"A conspiracy claim under § 1983 requires a plaintiff to show that (1) a defendant conspired with others to deprive [her] of one or more constitutional rights; (2) at least one

of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured [her]." *Munt v. Schnell*, No. 19-cv-1560 (WMW/BRT), 2020 WL 6121361, at *4 (D. Minn. June 22, 2020) (citing *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008)) (additional citations omitted), *report and recommendation adopted,* 2020 WL 5229676 (Sept. 2, 2020).  In order to state a viable conspiracy claim, Hari "must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Bonenberger v. St. Louis Metro. Police Dep't*, 810 F.3d 1103, 1109 (2016) (citation and quotation marks omitted); *see also Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010) (a conspiracy claim pursuant to Section 1983 "requires allegations of specific facts tending to show a meeting of the minds among the alleged conspirators.") (internal quotation marks and citation omitted).

Hari has failed to plead facts showing a meeting of the minds between Sherburne County Defendants (as well as the other Defendants) with any sort of particularity.  Hari only makes vague claims that these Defendants agreed "to read, review, scan, collect, record[,] transmit," or sometimes approve reports regarding an undescribed and unspecified number of "privileged legal or court communications including telephone calls and letters" to "a [federal] law enforcement central hub" for the purpose of violating her rights. (*See* Am. Compl. ¶ 4.) These conclusory statements asserting Defendants conspired to harm her are insufficient to state a conspiracy claim. *See Munt*, 2020 WL 6121361, at *5 (citing *Iqbal*, 556 U.S. at 678).  Nor do allegations that numerous Defendants took similar actions during the same time period arise to stating a claim for conspiracy. *See Twombly*, 550 U.S. at 557 ("[P]arallel conduct does not suggest conspiracy, and a

conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

Hari also fails to plead how she was injured, beyond a conclusory statement that the "overt acts of this conspiracy" led "to [her] injury" and that certain actions of certain Defendants "chilled" communication between her and her attorneys. (Am. Compl. ¶¶ 4, 14, 17, 18, 24.) The Court concludes that this is not enough to state a claim for conspiracy pursuant to Section 1983 and recommends dismissal of these claims.

### c. Remaining Constitutional Claims Under Section 1983

Hari brings Section 1983 claims against Brott, Beaumaster, Clem, Sieg, and Thiel in their individual and official capacities. (Am. Compl. ¶¶ 1, 8.) Hari alleges a number of violations by these Defendants: that unnamed Sherburne County Defendants interfered with confidential materials on her flash drive in the jail (*Id.* ¶¶ 16-17); that her incoming and outgoing legal mail was tampered with by Sherburne County Jail staff (*id.* ¶¶ 20-23); that Beaumaster read an outgoing letter to Hari's civil attorney (*id.*); and that during a search of her cell Clem and Thiel interfered with legal materials, including correspondence with her attorneys and notes prepared for her attorneys. (*Id.* ¶ 22.)

Hari further alleges that she was refused a private telephone so she could speak with her attorneys away from other inmates and jail officials, and that this official policy caused some of her injuries. (*Id.* ¶ 8.) The Court construes this as an official capacity claim only.

A liberal reading of the amended complaint suggests that Hari alleges each of these actions violated her First, Fourth, and Sixth Amendment rights. (*See generally* Am.

Compl.; *see also* ECF No. 115 at 7-11, 13-19 (framing her claims as First Amendment free speech claims);  19, 22 (framing her claims as Fourth Amendment claims); 19, 22, 24, 26-27 (framing her claims as Sixth Amendment claims).)   Sherburne County Defendants allege that Hari's claims cannot withstand a 12(b)(6) motion because she fails to state claims upon which relief can be granted.  (ECF No. 68 at 7-19.[15])

### i.  Official Capacity Claims

As stated above, "[a] suit against a public employee in his or her official capacity is merely a suit against the public employer."  *Outboard Marine Corp.*, 172 F.3d at 535 (citing *Graham*, 473 U.S. at 165).  "Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by a 'government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  *Gladden v. Richbourg*, 759 F.3d 960, 968 (8th Cir. 2014) (quotation omitted); *see also Ware v. Jackson Cty.*, 150 F.3d 873, 880 (8th Cir. 1998) ("A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a 'custom or usage with the force of law.'") (quoting *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978)).

"Official policy involves 'a deliberate choice to follow a course of action made from among various alternatives' by an official who is determined by state law to have the final

---

[15] Sherburne County Defendants also briefly state in their reply, without further argument, that they are entitled to qualified immunity on Hari's First Amendment claims.  (ECF No. 123 at 6.)

authority to establish governmental policy." *Ware*, 150 F.3d at 880 (quoting *Jane Doe A v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645 (8th Cir 1990)).

Alternatively, "custom or usage" is demonstrated by:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) The plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation.

*Ware*, 150 F.3d at 880 (quotation omitted).

"A governmental entity cannot be held vicariously liable for its agent's acts under § 1983." *Brockington v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007); *accord Keefe v. City of Minneapolis*, 785 F.3d 1216, 1227 (8th Cir. 2015) ("Generally, a government entity is not liable for its employee's actions under § 1983.") Accordingly, "a plaintiff must identify a governmental policy or custom that caused the plaintiff's injury to recover from a governmental entity under § 1983." *Brockington*, 503 F.3d at 674.

As best as this Court is able to tell from the amended complaint, the only "policy" to which Hari cites is the Sherburne County Jail's refusal to allow her access to a private telephone so she could speak with her attorneys "outside the hearing of other inmates or staff." (Am. Compl. ¶ 8.) Hari states at length in her memorandum in opposition to Sherburne County Defendants' motion to dismiss that she had not brought a claim against Sherburne County Defendants for recording telephone calls with her attorneys. (ECF No.

115 at 5-8.)  In part prompted by Sherburne County Defendants' memorandum in support of their motion to dismiss, however, Hari has moved to amend her complaint again to add these claims.  (*See* ECF No. 137.)  Hari also seeks to add allegations that from March 2020-April 2021, she was unable to meet with her attorneys in person due to the COVID-19 pandemic.[16]  (*See* ECF Nos. 137; 137-1.)

The Court first considers Hari's claim about private phone access and finds that, because during the relevant time period Hari was able to communicate with her attorneys in other ways, she has not stated a plausible claim.  Though the specific constitutional provision that gives rise to access to courts claims is unsettled, *see, e.g.*, *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002), "[i]t is well-established that an inmate has a constitutional right to meaningful access to the courts."  *Berdella v. Delo*, 972 F.2d 204, 209 (8th Cir. 1992).  Further, for Hari to successfully plead any such claim related to her access to the courts via her communications with her attorneys, she must allege an injury. *See White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007) ("To prove a violation . . . a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hinderance of a nonfrivolous and arguably meritorious underlying legal claim.") (citing *Harbury*, 536 U.S. at 413, 415; *Lewis v. Casey*, 518 U.S. 343, 351, 353, 355 (1996)).

Related to Hari's claim, as a general matter, "[t]here is no constitutional right to

---

[16] This motion is considered in further detail below.  *See infra* Section IV.

telephone access." *Stanko v. Sheridan Cty.*, No. 8:20CV294, 2020 WL 6707360, at *3 (D. Neb. Nov. 13, 2020); *see Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir. 1992) ("Although prisoners have a constitutional right of meaningful access to the courts, prisoners do not have a right to any particular means of access, including unlimited telephone use.") (citing *Bounds v. Smith*, 430 U.S. 817, 823 (1977)) (additional citations omitted). Hari was still able to contact her attorneys by mail. And she had the option to meet with her attorneys in person at the time outlined in the amended complaint. Hari's alleged injury that her speech was chilled is also not cognizable as it relates to her lack of access to a private phone. The Court thus recommends that official capacity claims related to Hari's private phone access be dismissed.

Similarly, the Court finds Hari's remaining official capacity claims outlined in the amended complaint, which relate to interference with her flash drive, legal correspondence, and other confidential documents, do not identify a policy or custom that caused her alleged injuries. *See, e.g.*, *Gladden*, 759 F.3d at 968; *Brockington*, 503 F.3d at 674. Hari does not point to a particular policy that caused her injuries. Nor has she alleged a custom. While Hari lists a number of grievances regarding the handling of different confidential materials, the specifics of each claim vary such that she does not establish any sort of pattern establishing a custom.[17] *See Brockington*, 503 F.3d at 674 ("A governmental custom involves a pattern of persistent and widespread practices which become so permanent and well settled as to have the effect and force of law."). The Court therefore recommends that

---

[17] In addition, as discussed below, there are instances in the amended complaint where Hari refers to interference with documents that she has not clearly defined as protected mail, or otherwise are not protected legal mail. *See infra* Section III.B.5.c.iii.

the remainder of Hari's official capacity claims outlined in the amended complaint be dismissed.

As outlined below, however, the Court will recommend allowing Hari to amend the operative complaint to add an official capacity claim for the alleged recording of her attorney-client telephone calls. *See infra* Section IV. Hari has identified a policy or custom that, on the face of her proposed second amended complaint, caused an identifiable injury under the Fourth Amendment.

### ii. Individual Claims Against Brott and Sieg

Hari also asserts individual claims against the Sherburne County Defendants. "Government officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). "To state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (citing *Iqbal*, 556 U.S. at 676)). Liberally construing the amended complaint, Hari has not alleged sufficient facts to allege individual capacity claims against Brott or Sieg.

As to Brott, Hari alleges only that he is liable because some of the official policies, practices, and customs of the Sherburne County Jail caused some of her injuries, and because Brott is "personally liable for the acts of his employees under Minnesota law." (Am. Compl. ¶ 8 (citing Minn. Stat. § 387.14).) This, however, does not sufficiently plead an individual capacity claim against Brott under Section 1983.

"Supervisors cannot be held vicariously liable under § 1983 for the actions of a subordinate." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1030 (8th Cir. 2012); *see Iqbal*, 556

U.S. at 676. "[A] supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). Hari has not alleged that Brott was directly involved in any of the alleged tampering with her confidential communications. Nor has she pleaded facts showing Brott should have known about the specific instances she alleges. She further does not plead that Brott failed to train Beaumaster, Clem, or Thiel, or that Brott was on notice of a pattern of unconstitutional conduct committed by his subordinates. *See id.* The Court thus recommends that the individual capacity claims asserted against Brott be dismissed.

The Court also recommends that individual capacity claims against Sieg be dismissed for failure to state a claim. As it relates to Sieg, Hari asserts only that: (1) he violated her First, Fourth, and Sixth Amendment rights for impermissibly interfering with her "attorney and other privileged communication" (Am. Compl. ¶ 1); (2) that he either agreed to "read, review, scan, collect, record or transmit" otherwise undescribed privileged communications, including telephone calls and letters or "personally gave" otherwise undescribed "supervisory approval for those acts" (*id.* ¶ 4); and (3) that Sieg provided otherwise undescribed "privileged documents" to Federal Defendant Kane. (*Id.* ¶ 20.)

These claims amount to nothing more than naked assertions, labels, and conclusions. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. The Court thus recommends they be dismissed.

### iii.  Remaining First Amendment Claims

Claims that an inmate's legal mail was tampered with are often analyzed under an access to courts claim in this Circuit.  *See, e.g.*, *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997).  In *Gardner*, the Eighth Circuit wrote:

> The act of opening incoming mail does not injure an inmate's right to access the courts.  The policy that incoming confidential legal mail should be opened in inmates' presence instead serves the prophylactic purpose of assuring them that confidential attorney-client mail has not been improperly read in the guise of searching for contraband.

*Id.*  "Given this limited purpose, inadvertent opening of legal mail cannot be actionable under § 1983 . . . because '[t]o assert a successful claim for denial of meaningful access to the courts . . . an inmate must demonstrate that he suffered prejudice.'"  *Id.* (quoting *Berdella*, 972 F.2d at 210).  If the First Amendment claim is understood under this context, as stated above,  Hari therefore "must demonstrate actual injury."  *Jackson v. Smith*, No. 16-cv-1406 (DSD/KMM), 2018 WL 707436, at *7 (D. Minn. Jan. 8, 2018) (citing *Lewis*, 518 U.S. at 349), *report and recommendation adopted*, 2018 WL 707489 (D. Minn. Feb. 5, 2018); *White*, 494 F.3d at 680.  "It is insufficient to show that [the] conduct made litigation inconvenient.  Instead the prisoner must show that this conduct actually prevented the prisoner from litigating the claim."  *Beck v. Pawlenty*, No. 04-cv-686 (MJD/JJG), 2006 WL 2506993, at *5 (D. Minn. Aug. 29, 2006) (citing *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996)).

The analysis does not end here, however, because Hari alleges in her amended complaint that her speech was chilled.  (*See, e.g.*, Am. Compl. ¶ 24 (alleging that the receipt

of an opened letter from a federal court which contained "privileged communication" chilled her attorney-client communications); ¶ 17 (alleging the interference with attorney-client communications on her flash drive similarly chilled these communications).)  In her memorandum in opposition to Sherburne County Defendants' motion to dismiss, she further clarifies that her First Amendment claims are freedom of speech claims as opposed to access to courts claims.  (ECF No. 115 at 8-11.)

Prisoners "retain those First Amendment rights of speech 'not inconsistent with [their] status as . . . prisoner[s] or with the legitimate penological objectives of the corrections system.'"  *Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)); *see Davis v. Norris*, 249 F.3d 800, 801 (8th Cir. 2001) ("Prisoners' First Amendment rights may be circumscribed if legitimate penological objectives outweigh preservation of their rights.") (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).  The Eighth Circuit has held that jail security is a sufficiently important governmental interest to justify limitations on an inmate's First Amendment rights.  *See, e.g.*, *Smith v. Delo*, 995 F.2d 827, 830 (8th Cir. 1993) (holding that officials were justified in screening outgoing nonlegal mail for contraband and threats).  It has also held that the photocopying and sharing of nonlegal mail with other law enforcement officers does not chill a prisoner's communications in violation of the First Amendment right to free speech.  *See Gassler v. Wood*, 14 F.3d 406, 408-09 (8th Cir. 1994). Notwithstanding the fact that there are sometimes permissible limitations on the rights of inmates, it is possible to state a First Amendment claim when a prisoner generally alleges that prison officials have read and inventoried legal mail or searched a container containing

legal material outside of a prisoner's view.  *See Foster v. Helling*, 210 F.3d 738, 2000 WL 328116, at *1 (8th Cir 2000) (per curiam) (table decision); *see also Powells v. Minnehaha Cty. Sheriff Dep't*, 198 F.3d 711, 712 (8th Cir 1999) (prisoner plaintiff stated a constitutional claim when he alleged officers opened his legal mail when he was not present).

However, only certain pieces of correspondence are protected as legal mail.  *See Moore v. Schuetzle*, 354 F. Supp. 2d 1065, 1078 (D.N.D. 2005) [hereinafter *Schuetzle*] ("The United States Supreme Court has held that an inmate's privileged mail may not be opened for inspections for contraband outside the presence of the inmate and has defined privileged mail as 'mail to or from an inmate's attorney and identified as such.'") (quoting *Wolff v. McDonnell*, 418 U.S. 539, 574 (1974)) (additional citation omitted).  "The question of whether a particular piece of correspondence is 'legal mail' is a question of law." *Schuetzle*, 354 F. Supp. 2d at 1078 (citing *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003)); *see also Moore v. Hoeven*, No. 1:08-cv-028, 2008 WL 1902451, at *11 (D.N.D. Apr. 28, 2008) [hereinafter *Hoeven*] (collecting cases and determining that protected legal mail is defined as privileged attorney-client correspondence).

Finally, other Circuits have considered freedom of speech claims as it relates to the alleged tampering with legal mail.  These cases, however, require that an inmate show a "pattern or practice" of the opening of their incoming legal mail outside their presence in order to sustain a freedom of speech claim where there is no showing of an actual injury. *See Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1212 (9th Cir. 2017) (finding a prisoner alleged a First Amendment freedom of speech claim when officials opened two incoming

pieces of legal mail outside his presence, thereby chilling his right to privately confer with counsel); *Shreane v. Holt*, 482 F. App'x 674, 676 (3d Cir. 2012) ("Prisoners may establish a violation of the First Amendment without establishing an actual injury where there is a pattern and practice of opening properly marked incoming legal mail outside of the prisoner's presence.") (citation omitted); *Al-Amin v. Smith*, 511 F.3d 1317, 1334 (11th Cir. 2008) (addressing whether the "pattern and practice of opening (but not reading) [Plaintiff's] clearly marked [incoming] attorney mail outside his presence sufficiently chills, inhibits, or interferes with [Plaintiff's] ability to speak, protest, and complain openly to his attorney so as to infringe on his right to free speech."); *see also Blair-Hanson v. Johnson*, No. 19-cv-2195 (NEB/TNL), 2020 WL 5105775, at *4 (D. Minn. Aug. 31, 2020) (discussing these cases).

There are a number of claims upon which Hari has not alleged sufficient facts to state a claim upon which relief may be granted under the First Amendment.  First, even drawing reasonable inferences in Hari's favor, her allegations regarding her flash drive do not amount to a cognizable First Amendment claim.  Hari does not allege any specific facts regarding the individuals who intentionally accessed the flash drive or left the flash drive plugged into the computer at the jail.  (Am. Compl. ¶¶ 16.)  Her claim that an unidentified individual at the jail read a letter she was drafting on a computer, prompting action from a federal prosecutor, is pure speculation.  (*See id.*)  Further, the number of administrative logins and other allegations that files "disappeared" or were otherwise accessed or altered does not demonstrate that any documents were read by jail officials.  (*See id.*)  Taken

together, these facts do not "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 680.

Nor can Hari's claims regarding her mail sent to or received from the courts survive. (*See* Am. Compl. ¶¶ 20, 23.[18]) This is not protected legal mail. *See Hoeven*, 2008 WL 1902451, at *12. Thus, these claims should be dismissed.

At this early stage in the litigation, however, the Court finds that Hari has alleged sufficient facts showing that Beaumaster, Clem, and Thiel violated her First Amendment rights. She alleges that Beaumaster "slowly and deliberately read" a letter addressed to a civil attorney on December 6, 2019, even after Hari told him it was privileged legal mail. (Am. Compl. ¶ 21.) Hari also alleges that on December 17, 2019, Clem and Thiel conducted a search of her cell where they "focused on reading legal materials, primarily correctly labeled and identified correspondence" between her and her attorneys. (*Id.* ¶ 22.) These individuals also allegedly told Hari that she could not prevent jail officials from reading documents by noting that they were attorney-client privileged. (*See id.*)

In both instances, Hari has identified with specificity individuals who read properly labeled attorney-client communications. Thus, Hari has stated a claim on which relief can be granted. *See Foster*, 210 F.3d 738, 2000 WL 328116, at *1; *Powells*, 198 F.3d at 712. It therefore recommends that Sherburne County Defendants' motion to dismiss be denied as to those individual capacity claims.

---

[18] In its read of the amended complaint, the Court interprets that the mail arriving with glued or taped flaps referenced in paragraph 20 was mail sent to this Court.

### iv.  Remaining Fourth Amendment Claims

The Fourth Amendment generally protects "against unreasonable searches and seizures." U.S. Const. amend. IV.  "A search occurs under the Fourth Amendment when . . . 'the government violates a subjective expectation of privacy that society recognizes as reasonable.'"  *Arnzen v. Palmer*, 713 F.3d 369, 372 (8th Cir. 2013) (quoting *Kyllo v. United States*, 533 U.S. 27, 31-33 (2001)); *see also Azam v. City of Columbia Heights*, 865 F.3d 980, 989 (8th Cir. 2017) ("The Supreme Court has interpreted the Fourth Amendment as proscribing unreasonable searches that intrude upon a person's reasonable expectation of privacy.") (citation omitted).

To determine "reasonableness" in a pretrial detention setting, a court must balance "the need for the particular search against the invasion of personal rights that the search entails."  *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).  The Supreme Court has further held that:

> society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in [her] prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.  The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

*Hudson*, 468 U.S. at 526; *see Bell*, 441 U.S. at 557 ("[G]iven the realities of institutional confinement, any reasonable expectation of privacy that a detainee retained necessarily would be of a diminished scope."); *Arnzen*, 713 F.3d at 372 ("[N]either [the Eighth Circuit] nor the Supreme Court has ever outlined exactly what expectation of privacy [pretrial

detainees] reasonably have, outside of our holding that detainees do not have a reasonable expectation of privacy in their jail cells.").

Again, as best as the Court can tell, Hari seems to allege that her mail, other documents, and flash drive were searched in violation of the Fourth Amendment. However, to the extent that the Court recommends the individual capacity claims against Beaumaster, Clem, and Thiel survive, the Court finds that these are properly pleaded as First Amendment claims. *See Foster* 210 F.3d 738, 2000 WL 328116, at *1 (affirming the dismissal of the Fourth Amendment claim regarding legal mail but reversing the dismissal of the First Amendment claim).

### v. Remaining Sixth Amendment Claims

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for [her] defence." U.S. Const. amend. VI. "To raise a successful § 1983 claim for the violation of the Sixth Amendment, [Hari] must demonstrate that there was an intrusion into the attorney-client communication and that there was some prejudice to [her]." *Andersen v. Cty. of Becker*, No. 08-cv-5687 (ADM/RLE), 2009 WL 3164769, at *12 (D. Minn. Sept. 28, 2009) (citing *Weatherford v. Bursey*, 429 U.S. 545, 558 (1977)). Courts in this district have analyzed prisoners' Sixth Amendment claims under Section 1983 as it relates to the recording and monitoring of their phone calls and interference with their legal mail. *See id.* (writing in the context of the recording and monitoring of phone calls that "Plaintiffs must demonstrate that there was an intrusion into the attorney-client communication and that there was some prejudice to them."); *Thomsen v. Ross*, 368 F. Supp. 2d 961, 974 (D. Minn. 2005) (finding that a

58

prisoner's Sixth Amendment claim failed for "failure to show prejudice from any interference with his mail."). Further, any assertion that Hari felt unable to correspond with her attorneys does not rise to the level of a Sixth Amendment violation. *Id.* (citing *Lewis v. Cook Cty. Bd. of Comm'rs*, 6 Fed. App'x 428, 430 (7th Cir. 2001)).

Hari has not sufficiently pleaded that she has suffered any prejudice from any alleged interference with her legal mail or other communications. *See Weatherford*, 429 U.S. at 558. The Court thus recommends that Hari's Sixth Amendment claims be dismissed.

### vi. Conclusion

Liberally construing the amended complaint, the claims against Sherburne County Defendants in their official capacities fail because Hari has not alleged that her constitutional rights were violated by a government policy or custom. Those claims should be dismissed. As addressed further below, however, Hari should be allowed to amend the operative complaint to add an official capacity claim regarding the alleged recording of her attorney-client telephone calls at the Sherburne County Jail. *See infra* Section IV.

Hari has also not alleged sufficient facts to state Fourth or Sixth Amendment claims against any individual Sherburne County Defendant and has not alleged sufficient facts to state a First Amendment claim against either Brott or Sieg. Those claims should also be dismissed. Hari has, however, alleged sufficient facts to state a First Amendment claim against Beaumaster, Clem, and Thiel in their individual capacities only.

### 6. Damages

Sherburne County Defendants argue that the Prison Litigation Reform Act, 42 U.S.C. § 1997e (hereinafter "PLRA") bars Hari's claim for compensatory damages because she has failed to allege a physical injury resulting from Defendants' acts. (ECF No. 68 at 23-26.) Perhaps in reacting to this legal argument, Hari has proposed striking her claim for compensatory damages. (*See generally* ECF Nos. 137; 137-1.)

In addition, since the filing of this lawsuit, Hari has since been transferred back to Illinois to await trial in *United States v. Hari II*. (*See* ECF Nos. 191; 192.) Her claims for injunctive relief against any remaining Sherburne County Defendant would thus be moot. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("a prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions.").

Hari also seeks punitive damages against Sherburne County Defendants. (Am. Compl. ¶ 1.) "Punitive damages may be awarded under 42 U.S.C. § 1983 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Schaub v. VonWald*, 638 F.3d 905, 933 (8th Cir. 2011) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

Here, Hari has pleaded that Beaumaster slowly and deliberately read her outgoing legal mail even after Hari informed him of its confidential nature. She also alleges that Clem and Thiel read legal mail addressed to her attorneys while searching her cell, and that Clem made comments that she could not avoid the reading of a letter's contents by marking

it as legal mail.  While making no comment on the ultimate merits of these claims, the Court finds that Hari has pleaded that these Defendants acted with reckless indifference, which "requires evidence that [they] acted 'in the face of a perceived risk that [his or her] actions [would] violate federal law.'"  *Swipies v. Kofka*, 419 F.3d 709, 718 (8th Cir. 2005) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999)).  Thus, as further outlined below in conjunction with Hari's motion for leave to amend, the Court recommends that Hari be allowed to amend the operative complaint to strike her claim for compensatory damages, that her claim for injunctive relief be dismissed, and that her claims for nominal and punitive damages remain.

## IV.  MOTION FOR LEAVE TO AMEND COMPLAINT

Following the filing of the motions to dismiss, Hari filed a motion asking to amend her complaint a second time.  (ECF No. 137.)  Defendants oppose this motion for a number of reasons.  Sherburne County Defendants oppose the motion on the basis that Hari's proposed amendments are futile.  (ECF No. 142 at 5-16.)  Federal Defendants argue that allowing Hari to amend the operative complaint would cause undue delay and prejudice, and that her proposed amendments are futile.  (ECF No. 143 at 8-18.)  Visel also argues that the amendments would be futile and that granting Hari's motion would cause undue delay.  (ECF No. 145 at 1-11.)

### A.  Requested Amendments

Along with her motion, Hari filed a document that has strikeouts and added language that represents her proposed second amended complaint.  (ECF No. 137-1.)  Hari wishes to add an additional claim against Sherburne County Defendants; to delete all

references to the Anoka County Defendants; to add "new supporting evidence obtained in recent discovery to flesh out existing claims;" and to clarify and address weak language pointed out by the motions to dismiss, particularly regarding her *Bivens* claims and Section 1983 claims against Robbins and Westby. At the outset, Hari seeks to add conclusory language to reinforce her conspiracy claim and establish jurisdiction over all Defendants. (*Id.* at 4.) She then seeks to add language to clarify that "[e]very act committed by each of the Defendants" was "the result of willful and wanton misconduct" and "intentionally committed." (*Id.*) She also makes other minor clarifications and strikes language suggesting she would like to withdraw her claim for compensatory damages. The Court recommends granting Hari's motion in part to allow her to strike her claim for compensatory damages. The Court addresses the remainder of her proposed amendments by Defendant group.[19]

## B. Analysis

Once 21 days have passed after service of a responsive pleading, a party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "Although leave to amend 'shall be freely given when justice so requires,' *see* Fed. R. Civ. P. 15(a), plaintiffs do not have an absolute or automatic right to amend." *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005) (citing *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002)). The Court may deny a party's request for leave to amend only "if there

---

[19] The Court has recommended Anoka County Defendants be dismissed from this action, *see supra* Section III.A.2, and thus recommends Hari's motion be granted in part to the extent she seeks to remove references and claims to the Anoka County Defendants throughout the amended complaint.

are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) (quoting *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008)). "[A] motion to amend should be denied on the merits 'only if it asserts clearly frivolous claims or defenses.'" *Becker v. Univ. of Nebraska at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999) (quoting *Gamma–10 Plastics, Inc. v. American President Lines, Ltd.*, 32 F.3d 1244, 1255 (8th Cir. 1994)).

Here, all Defendants contend that Hari's proposed amendments would be futile. A motion for leave to amend a pleading is futile when the amended pleading would not be able to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). The Court has discussed at length above the legal standard for surviving such a motion. *See supra* Section III.B.5.

### 1. Sherburne County Defendants

First, Hari seeks to add claims against the Sherburne County Defendants for the recording of conversations she had with her attorneys. (ECF No. 137 at 2.) She states that through discovery, Sherburne County has produced records of recorded phone calls which they allegedly turned over to the FBI. (*Id.* at 2; ECF No 137-1 at 9.) Hari provides that she first realized when Sherburne County Defendants filed their motion to dismiss that they had monitored her attorney-client phone calls. (ECF No. 137-1 at 13.)

Hari also seeks to add that (1) she had added her attorneys' phone numbers to the jail's Securus phone system prior to these calls' recordings, but nevertheless in April 2021

received "records of recorded privileged attorney client phone calls" (*Id*); (2) she filed a grievance and appeal complaining about the recordings of these calls, and Sherburne County officials responded that the numbers have been searched in the Securus system, that the system shows they are private calls, and that they were not monitored or recorded (*Id.* at 13-14); (3) in March and April 2019, 14 calls she made to her Illinois defense attorney were recorded by the jail and provided to the FBI; (*Id.* at 14, 29); (4) from January 27, 2021, and continuing through at least March 31, 2021, the jail recorded another 17 calls Hari made to her Illinois and Minnesota defense attorneys, the calls were provided to the FBI by the jail, and these calls "contained sensitive and privileged attorney-client information" (*Id.* at 14-15); and (5) Sherburne County officials, including Defendants Sieg and Thiel, did not attempt to minimize or screen the collected attorney-client calls. (*Id.* at 29.)

Hari also seeks to add general claims about how COVID-19 measures at the Sherburne County Jail hindered her ability to communicate privately with her attorneys. She seeks to add that from March 2020 through at least April 2021, Sherburne County did not allow face-to-face communications with attorneys due to COVID-19 measures and that her Illinois defense counsel was not advised "of the availability of allegedly secure Zoom meetings" until March of 2021. (*Id.* at 10.) Hari alleges that she grieved and appealed the denial of these in-person meetings. (*Id.* at 10, 12.)

Finally, Hari seeks to add facts and language that shore up her claims that documents on her flash drive were compromised and that her legal materials were read while she was at the Sherburne County Jail. She seeks to add that (1) "as yet unidentified" Sherburne

County Defendants chilled communication between Hari and her defense team due to the handling of her flash drive (*Id.* at 26); (2) "[e]very piece of privileged legal mail, notes, or other legal communication" on the flash drive was "labeled as privileged attorney client communication in a water mark and also in a header and footer" (*Id.* at 27); (3) the letter allegedly read by Defendant Beaumaster on December 9, 2019, was "properly marked privileged" legal mail (*Id.* at 30); and (4) during the shakedown of her cell on December 17, 2019, Defendants Clem and Thiel gave a level of attention to her legal materials that "was not consistent with only searching for contraband, but was consistent with slowly, thoroughly, and carefully reading the properly marked privileged legal correspondence for content." (*Id.* at 31.)

Considering the Court's earlier recommendations on Sherburne County Defendants' motion to dismiss, the Court recommends granting Hari's motion in part and denying Hari's motion in part as it relates to these Defendants.

Many of Hari's proposed amendments are futile. First, all amendments Hari proposes regarding information stored on her flash drive do not cure the previous deficiencies with Hari's amended complaint. There are still no allegations before the Court that suggest any of the files on the flash drive (to the extent they were protected attorney-client mail) were read by jail officials. *See supra* Section III.B.5.c.iii.

Nor do Hari's amendments regarding the inability of in-person meetings due to the COVID-19 pandemic state a claim on which relief can be granted. The Court has considered the allegations of lack of in-person access to Hari's attorneys for approximately 13 months in conjunction with Hari's other claims and concludes this lack of in-person

access did not violate Hari's rights.  At the time, Hari still had the ability to speak with her attorneys by phone.  Hari could also send mail to her attorneys.  While Hari has argued that she felt she was unable to communicate with her attorneys by way of mail, and the Court has found that she has adequately pleaded two instances of interference with protected attorney-client mail, the Court has also found that Hari has failed to allege an official policy or custom of interference with legally protected correspondence with her attorneys.  *See supra* Sections III.B.5.c.i, iii.

Further, by Hari's own admission in the proposed second amended complaint, she had no knowledge during the jail's lockdown that any of her privileged phone calls were being recorded.  Thus, her communications with her attorneys on the phone could not have been chilled.  *See Andersen*, 2009 WL 3164769, at *9 (finding no First Amendment violation when "at the time [plaintiffs] were communicating with their attorneys, they believed they could make an unmonitored phone call, and, thus, no chilling effect occurred.").  Nor could this be a viable Sixth Amendment claim, as Hari has not pleaded any facts that she was prejudiced by lack of in-person contact with her attorneys.  *See Thomsen*, 368 F. Supp. 2d at 974.  The Court thus recommends denying Hari's motion to the extent she seeks to add a claim regarding lack of in-person meetings at the Sherburne County Jail.

The Court has, however, found that Hari has sufficiently pleaded individual-capacity claims against Beaumaster, Clem, and Thiel related to the alleged reading of her legal mail.  *See supra* Section III.B.5.c.iii.  The Court recommends granting Hari's motion in part to allow her to add the additional language related to those claims.

The Court also concludes that Hari should be able to amend the operative complaint to add a Fourth Amendment claim for the alleged recording of her attorney-client privileged phone calls. As the Court has outlined above, it is well established that pretrial detainees have diminished privacy interests under the Fourth Amendment. *See Hudson*, 468 U.S. at 526; *Bell*, 441 U.S. at 557; *Arnzen*, 713 F.3d at 372. The Eighth Circuit has not directly considered whether the Fourth Amendment protects telephone conversations pretrial detainees make from jail. However, "[t]he attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888)). A number of courts have held pretrial detainees using jail telephones "retain Fourth Amendment rights in keeping conversations with their attorney confidential." *Lieberman v. Portage Cty.*, No. 18-cv-450-jdp, 2020 WL 869232, at *5 (W.D. Wis. Feb. 21, 2020) (collecting cases); *see also Guild v. Securus Techns., Inc.*, No. 1:14-CV-366-LY, 2015 WL 10818584, at *11-12 (W.D. Tex. Feb. 4, 2015) (denying motion to dismiss Fourth Amendment claim when attorney-client phone calls were allegedly recorded and concluding "Plaintiffs have . . . properly alleged that attorneys and detainee clients have a reasonable expectation of privacy in their confidential communications."), *report and recommendation adopted*, 2015 WL 11237655 (W.D. Tex. Mar. 23, 2015).

In *Lieberman*, the court considered a number of cases which considered a Fourth Amendment claim for the recording of inmates' telephone calls with their lawyers, noting, "all the courts have agreed on one point: if the inmates were put on notice that their calls

were being recorded, the Fourth Amendment claim failed." 2020 WL 869232, at *7; *see also Miller v. Davidson*, No. 4:21CV3092, 2021 WL 4132420, at *6 (D. Neb. Sept. 10, 2021) ("The Fourth Amendment extends to the recording of oral statements where the person has a legitimate expectation of privacy . . . . However, where a prison provides notice that calls may be monitored, there is no reasonable expectation of privacy in such communications.") (citations omitted).

In her proposed amendments, Hari has claimed that she provided her attorneys' phone numbers to Sherburne County Jail staff upon her arrival, so that they could be inputted into the Securus system as private calls. Notwithstanding this request, she alleges that no less than 31 calls with her attorneys were recorded—17 of which occurred after she had been housed at the jail for months. She further claims that when she submitted a grievance claiming these calls had been recorded, staff told her the calls were not recorded, which was contradicted by records she had received through discovery.

Hari's claims are similar to the facts pleaded in *Guild*, where the court ultimately concluded that plaintiffs had stated a Fourth Amendment claim when: (1) the county sheriff's office and Securus informed the public that attorney-client phone calls were not recorded; (2) a jail employee informed plaintiffs that attorney-client phone calls were not recorded or listened to by staff; and (3) detainees were led to believe their attorney-client telephone calls were confidential. 2015 WL 10818584, at *12; *cf. Lieberman*, 2020 WL 869232, at *9 (granting motion for summary judgment because plaintiff detainee did not provide an objective basis for his belief that his attorney calls were not being recorded). Similarly, in *Miller*, a court in this circuit found on initial review of a prisoner complaint

that a plaintiff had pleaded a plausible Fourth Amendment official capacity claim when he alleged an incoming call from his attorney was recorded after he was informed the call would not be. 2021 WL 4132420, at *7.

The Court ultimately finds that Hari has, at least at this stage in the litigation, demonstrated she had a reasonable expectation of privacy in the calls she made to her attorneys after she followed jail procedure and submitted her attorneys' phone numbers to staff to be inputted into the jail's Securus telephone system. *See Guild*, 2015 WL 10818584 at *12; *Miller*, 2021 WL 4132420, at *6-7. The Court thus recommends that Hari's motion be granted to the extent she seeks to add an official capacity claim against Sherburne County for the recording of her telephone calls with her attorneys.

### 2. Federal Defendants

Hari does not seek to add additional claims against the Federal Defendants, but instead asks the Court to permit amendments that she believes would bolster her existing claims. She asks to clarify that Robbins is being sued under Section 1983 "for all tortous [sic] acts described in [her] complaint" taken "under color of state law" and that she is being sued as a state official. (ECF No. 137-1 at 11.) She also asks to add that Robbins and Westby were both members of "local/federal task forces as deputized federal officers while employed as local police officers" and to clarify that she is suing them under Section 1983 for actions taken under color of state law, but in their individual capacities under the *Bivens* doctrine for any acts taken as federal agents. (*Id.*)

Hari also asks to add factual allegations that:

- Robbins collected pages of a properly marked and privileged letter addressed to her attorney, which had been seized by US Marshals in July 2018 and "folded together with the rest of the pages in a properly marked envelope," and subsequently provided these communications "by mutual agreement" to Smith and Kane (*Id.* at 11, 27);

- Smith took no action to stop the collection of attorney-client privileged calls (*Id.* at 18);

- Carroll made summaries of privileged legal calls recorded at the Livingston County Jail and distributed those summaries to unnamed FBI agents involved "in Hari's criminal prosecution" (*Id.*);

- Arden approved Carroll's summaries, sent them to her superiors for further approval with information from the summaries included in her reports, made them available to unnamed FBI agents investigating Hari, and did not take action to stop the collection or recording of privileged calls or alert Hari's defense team of the same (*Id.* at 18-19);

- Kane "agreed" with unspecified persons at various county jails "to receive privileged legal communications," "reviewed them," and also engaged with Hull to decrypt a document seized from Hari's Anoka County Jail cell (*Id.* at 21);

- Hull attempted to decrypt Hari's attorney-client letter using the recorded attorney-client phone calls provided by Kane (*Id.*);

- Smith similarly "agreed" with unspecified persons "to receive privileged legal communications" from various county jails (*Id.* at 21-22);

- Akens, Hull, Huse, Gena, and Arden's unknown supervisor "reviewed reports of the recording and summarizing of privileged legal phone calls," "gave official approval to the acts by approving" these reports, and "did nothing to stop the recording" of these phone calls. (*Id.* at 22.)

For the reasons discussed at length in this report and recommendation, the Court recommends denying Hari's motion to the extent she seeks to amend any claims against Federal Defendants because the proposed amendments are futile. None of the proposed amendments cure deficiencies with the amended complaint. Hari still fails to plead sufficient facts that the Court has personal jurisdiction over Gena. *See supra* Section III.B.2. Hari's newly proposed facts likewise do not change this Court's analysis that Robbins and Westby were acting pursuant to federal law. *See supra* Section III.B.3. Nor do the proposed amendments alter this Court's conclusions that application of *Bivens* is not warranted in this case. *See supra* Section III.B.4. Finally, Hari still fails to state plausible claims for relief under the federal wiretapping act and MPCA, and the relevant Federal Defendants are entitled to qualified immunity on those claims. *See supra* Section III.B.5.a.

### 3. Visel

Beyond seeking to add general language that Visel is subject to this Court's personal jurisdiction, Hari also seeks to clarify that she is bringing claims against Visel for her tortious actions while she was acting under color of state law. (ECF No. 137-1 at 10-11.) Hari does not seek to add any additional specific allegations against Visel.

The Court also recommends denying Hari's motion to amend the complaint as it applies to Visel, because the proposed amendments are futile. Hari still fails to make a prima facie showing that personal jurisdiction exists over this Defendant. *See supra* Section III.B.2.

## V. CONCLUSION

After considering the numerous motions before the Court, the Court recommends that Hari's claims alleged in the amended complaint be dismissed, except the First Amendment individual capacity claims asserted against Sherburne County Defendants Beaumaster, Clem, and Thiel related to the alleged reading of her legal mail. The Court also recommends that Hari's motion to amend the complaint be granted only in part to permit her to strike her claim for compensatory damages; to add additional facts related to the First Amendment claims against Beaumaster, Clem, and Thiel; and to add a Fourth Amendment claim against Sherburne County related to the recording of her attorney-client telephone calls.

## VI. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Sherburne County Defendants' Motion to Dismiss (ECF No. 40) be **DENIED AS MOOT**.

2. Anoka County Defendants' Motion to Dismiss (ECF No. 59) be **DENIED AS MOOT**.

3. Sherburne County Defendants' Motion to Dismiss (ECF No. 65) be **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

4. Hari's Motion to Dismiss or Otherwise Eliminate Rasmussen Claims from this Cause (ECF No. 78) be **DENIED AS MOOT**.

5. Federal Defendants' Motion to Dismiss (ECF No. 90) be **GRANTED**.

6. Defendant Beth Visel's Motion to Dismiss the Amended Complaint (ECF No. 99) be **GRANTED**.

7. Plaintiff's Motion for Leave to Amend Civil Rights Complaint and Memorandum in Support (ECF No. 137) be **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

Date: January  31 , 2022                    *s/Tony N. Leung*
                                         Tony N. Leung
                                         United States Magistrate Judge
                                         District of Minnesota

                                         *Hari v. Smith, et al.*
                                         Case No. 20-cv-1455 (ECT/TNL)

## **NOTICE**

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).